## POOLE v. UNITED STATES.

### No. 8688.

Circuit Court of Appeals, Ninth Circuit.

June 3, 1938.

William E. Ferriter and James C. Purcell, both of San Francisco, Cal. (William F. Herron, of San Francisco, Cal., of counsel), for appellant.

Frank J. Hennessy, U. S. Atty., and S. P. Murman, Asst. U. S. Atty., both of San Francisco, Cal.

Before GARRECHT, HANEY, and STEPHENS, Circuit Judges.

GARRECHT, Circuit Judge.

Appellant, Lois Grant and James Bacigalupi were indicted on three counts, for unlawfully selling, dispensing and distributing morphine, for concealing and facilitating the concealment of a lot of morphine, and for feloniously conspiring together and with other persons, to sell, dispense and distribute morphine which had been imported contrary to law. Appellant was tried separately. The jury returned a verdict of guilty and sentence was duly imposed.

Appellant urges that the evidence in this case is insufficient to justify the verdict and that the court should have directed a verdict of acquittal. We have carefully reviewed the evidence introduced at the trial and we deem it proper to say that the evidence was sufficient to make a case for the jury, even if the evidence which we hold was improper had been rejected.

The appellant contends that the trial court erred in admitting evidence of an accusatory statement made in the presence of, and by his co-defendant, Lois Grant, which accusation at the time was denied by appellant. Various government agents attached to the Narcotic Bureau, who were witnesses, testified in substance that after the appellant's arrest he was taken by the officers, who had him in custody, to the Federal Building. The evidence shows that Lois Grant and James Bacigalupi, appellant's co-defendants, who had been previously arrested, were in the room in the Federal Building, to which appellant was brought. He was taken to a desk where he was having his finger prints taken. He had his back toward the other occupants of the room. His co-defendant, James Bacigalupi, was seated at the end of the room in one corner and one Joseph Wood, who also had been previously arrested, was seated in the other corner. Lois Grant was seated at a desk also in a position where appellant's back was toward her. One of the agents, who was with appellant when he was brought in, walked over to the desk where Lois Grant was seated and pointed to appellant and said: "Now, tell the truth, isn't that the man you got the narcotics from that you sold to me?"

She said: "Yes, he is."

At the time appellant's back was still toward these other occupants of the room. He turned around and said: "I did not have anything to do with what you have said, but if anybody says so it is a lie."

It is conceded that ordinarily such testimony is not admissible.

It was urged, as basis for its admission, that there was nothing in this conversation occurring between the agent and Lois Grant, and within the group toward which appellant's back was turned, which would have indicated to him that he was the person meant in the accusation, and that in assuming that the matter concerned him and protesting his innocence without knowing he was accused was some evidence of guilty knowledge, as indicated by his conduct and demeanor and it was submitted to the jury in that light.

This proceeding presents a novel situation for which we find no precedent in the books. We are aware that in the rapid advance of science on many fronts, criminal psychology has not lagged. We hear of lie detectors and other devices for exposing crime which are being experimented with by law enforcement officers. Methods and processes whereby criminals are said to unconsciously betray themselves furnish interesting incidents for study, but we are not prepared to sanction such innovations until their reliability has been better established.

In his dilemma what was this appellant to do? He had just been arrested, charged with unlawfully handling narcotics. At the time of his arrest he was asked "if he had any dealings with Lois Grant" and if he sold any narcotics. He was taken by the arresting officers to headquarters where he was being finger printed. At the moment one of the officers, who was concerned in his arrest, steps back and he hears him ask someone in the room, "Now tell the truth, isn't that the man you got the narcotics from that you sold to me?", to which a woman's voice replies, "Yes, he is." In these circumstances is it to be said that it was extraordinary that he should suppose that he was being referred to and that to speak up and deny any guilt is to assume that such protest is unwarranted and prompted only by conscious guilt? Had he kept silence could it not have been argued with equal if not greater force that his failure to deny was the silent admission of guilt?

The great prejudice here was that in this indirect manner, there was brought to the knowledge of the jury that appellant's codefendant, Lois Grant, who did not testify at the trial and who was not under oath at the time, had identified him as the man who supplied her with the forbidden drug. This method of proof was a violation of the hearsay rule. Amezaga v. United States, 5 Cir., 296 F. 915; Yep v. United States, 10 Cir., 83 F.2d 41; McCarthy v. United States, 6 Cir., 25 F.2d 298; People v. Teshara, 134 Cal. 542, 66 P. 798.

To admit this evidence was prejudicial error.

Reversed and remanded for a new trial.