UNITED STATES of America,
Plaintiff,

v.

John BARBATI, Defendant.

No. 66 CR 98.

United States District Court
E. D. New York.

April 26, 1968.

Joseph P. Hoey, U. S. Atty. for Eastern District of New York, Brooklyn, for plaintiff; Dennis Dillon, Asst. U. S. Atty., of counsel.

S. Paul Fishman, Brooklyn, for defendant.

## OPINION AND ORDER

WEINSTEIN, District Judge.

Having been convicted of passing a Ten Dollar counterfeit bill (18 U.S.C. § 472), defendant moves for a new trial on the ground that the verdict rested upon inadmissible hearsay evidence. See Fed.R.Crim.Proc. 33.

A barmaid and a policeman were the chief witnesses for the prosecution. Two counterfeit Ten Dollar bills had been given to the barmaid in payment for drinks by two men sitting together at the bar. She showed the bills to the manager who hailed a passing police car. Within a few minutes of the time the bills were passed, the policeman had arrested the defendant and his companion in the bar.

At the trial the notes were identified by the policeman as those the barmaid had turned over to him. She also identified the notes, relying upon the signature she had affixed at the time of the arrest.

While the barmaid testified that two men had given her the bills and that she had pointed out the men who gave them

to her, she could not, at the time of the trial, recognize the defendant or his companion. Testimony by the policeman, however, established that the defendant was the one pointed out to him as soon as he was called into the bar and that, following identification and arrest, the defendant was taken to the stationhouse where he was fingerprinted and booked.

The critical testimony of the barmaid was as follows:

A   *   *   *   they [the police] came and they asked me where I got the money, I showed them.

Q   Did you point out the two men?

A   Yes, I did.

Q   What if anything happened after that?

A   Well, they searched the men.

Q   Did they search the two men that you pointed out?

A   Yes.

Q   Do you see any of them here now?

A   I can't remember them.

Q   You wouldn't remember what the men looked like now?

A   No, it was so long ago.

Q   What if anything did you do with the $10 notes you got from these men, after the police came?

A   I was taken in the back with the money and the police and I signed those notes at that time.

  *   *   *   *   *   *

Q   Those were the two notes that were given to you in the bar by the two men?

A   Yes.

Q   What if anything did the police do with the two men that you pointed out in your presence?

A   They put their hands on the walls *   *   *   and they searched them for weapons, I guess and after that I don't know what happened to the two men, I suppose they took them away.

The policeman had no doubt that the defendant was the person identified in the bar by the barmaid. The barmaid had no doubt that the man she pointed out and who was arrested was the person who gave her one of the notes. It is not disputed that the person so identified was physically in police custody until after he was fingerprinted. No one suggests that the person fingerprinted is not the defendant who was tried in this case.

The evidence was highly probative and reliable. No more satisfactory proof was available. The apparatus for testing the credibility of these two key witnesses was available—the oath, cross-examination and presence at the trial where the jury could observe demeanor.

### VIOLATION OF CONSTITUTION AND CRIMINAL RULES

█   Admission of this evidence violated no right protected by written rule or by the Constitution. Since both the policeman and the barmaid testified, there was no violation of Federal Rule of Criminal Procedure 26—requiring that "the testimony of witnesses shall be taken orally in open court." Nor, for the same reason, was there a violation of the constitutional right of confrontation. The "primary object" of the constitutional requirement is "to prevent depositions or ex parte affidavits *   *   *   being used against the prisoner in lieu of a personal examination and cross-examination of the witness." Mattox v. United States, 156 U.S. 237, 242, 15 S.Ct. 337, 339, 39 L.Ed. 409 (1895).

We do not have a case such as Douglas v. State of Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965) where a witness refused to testify on the ground that his testimony might incriminate him. Since the witness in *Douglas* could not be cross-examined, he was, for practical purposes, not present. The Court held that utilization by the government of the silent witness's prior statement violated defendant's right to confrontation.

If a witness attempted to fobb off defense counsel's cross-examination by claiming that his memory had failed and if that claim were suspect, the court

could—following *Douglas*—treat the failure of memory as equivalent to a refusal to testify on the ground of privilege. Here we do not have such a case since the barmaid testified freely. There was no hint or suspicion that she refused to identify the defendant at the trial in order to frustrate cross-examination. In fact, she was vigorously cross-examined.

The rule requiring counsel to be present at a lineup can have no application to identification by a victim at the scene of the crime immediately after its commission. Cf. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Gilbert v. State of California, 388 U.S. 263, 272–273, n. 3, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

## VIOLATION OF HEARSAY RULE

There is more force to defendant's contention that the testimony with respect to the identification by the barmaid at the scene of the crime constituted hearsay. Whether made orally, or by pointing him out, the barmaid was then, the argument goes, making an extra-judicial testimonial statement. This out-of-court statement was being relied upon at the trial to prove its truth, namely, that the man she pointed out was the one who passed a counterfeit bill to her. Since its use required reliance upon all elements of her credibility—observation power, memory, truthfulness and ability to communicate—the barmaid's testimony, defendant concludes, involved serious hearsay dangers.

This analysis is not conclusive. Much that might be classified as hearsay is held not to be hearsay. Much that is hearsay is, nonetheless, admissible.

Courts have not hesitated to characterize as non-hearsay evidence whose use involves hearsay dangers when it is highly probative and necessary. Typical are those criminal cases involving conversations received over the telephone at suspected betting parlors. Use of the statements of the assumed betters requires reliance on the callers' credibility to conclude that they intended to place bets and had some reason to believe that they were calling a bookie. Despite the existence of hearsay dangers this evidence is admitted as non-hearsay. See, e. g., State v. Tolisano, 136 Conn. 210, 70 A.2d 118 (1949); Annot., 13 A.L.R.2d 1405 (1950).

The evidence in the case before us can be classified as non-hearsay without doing violence to theory by analogizing it to proof of identification of objects. In a sense the barmaid turned both the bills and the defendant over to the police. She signed the bills but not the defendant. He, however, was taken in hand and the chain of custody continued until he was brought to the police station where he was fingerprinted—the equivalent of being signed. Defendant's subsequent release on his own recognizance does not break the chain of identification-authentication since there is no doubt that he was the one fingerprinted. Analytically, the barmaid now testifies from present memory, "I was given a counterfeit bill by a man, X, and I saw the police arrest X." The policeman testifies from present memory, "the man we arrested, X, was the defendant." Neither of these statements is hearsay.

The analogy will become clearer by assuming the case of a blind man who feels a pickpocket taking his wallet. Assume he seizes the thief, holds him, and calls for help and that a policeman comes by immediately and arrests the man being held. No one would apply the heasay rule to prevent the identification even though the blind man would not be able to recognize the defendant at the trial. His testimony plus that of the arresting officer would suffice.

Despite the fact that a respectable argument can be made that no hearsay is involved in the instant case, the Court prefers to proceed on the more realistic assumption that hearsay was relied upon by the prosecution. Both the policeman and the barmaid were permitted to buttress each other's testimony by testifying, in effect, that the barmaid said, at

the time of arrest, "This is the man who gave me these bills."

The current clear tendency is for federal courts to ask whether admissibility will tend to aid in the search for truth. Hearsay is admitted when it is highly reliable, highly probative, and where the opponent has an adequate opportunity to attack it. See, e. g., United States v. Castellana, 349 F.2d 264, 276 (2d Cir. 1965), cert. denied, 383 U.S. 928, 86 S.Ct. 935, 15 L.Ed.2d 847 (1966) ("We are loath to reduce the corpus of hearsay rules to a strait-jacketing, hypertechnical body of semantical slogans to be mechanically invoked regardless of the reliability of the proffered evidence"); Dallas County v. Commercial Union Assurance Co., 286 F.2d 388, 398 (5th Cir. 1961) (hearsay "admissible because it is necessary and trustworthy"); United States v. Schwartz, 252 F.Supp. 866 (E.D.Pa. 1966). Cf. United States v. Nuccio, 373 F.2d 168, 174 (2d Cir.), cert. denied, 387 U.S. 906, 87 S.Ct. 1688, 18 L.Ed.2d 623 (1967) ("the notion that evidentiary use of anything emerging from the mouth is banned unless it comes within an exception to the hearsay rule is as fallacious as it is durable"). Use of necessary and trustworthy hearsay in a criminal case is typified by the *Schwartz* case where the court found that the prior writing of a witness who was "evasive, unresponsive and contradictory" and "apparently a very sick man," was more satisfactory than his testimony on the witness stand; his prior written statement was admitted even though it was hearsay. 252 F.Supp. at 868. The Court pointed out that there was a necessity for his testimony, that the "jurors had the opportunity to observe the witness' demeanor," and that there was a guarantee of trustworthiness in the way that the statement had been prepared. 252 F.Supp. at 868–869.

The matter before us is quite unlike those in the typical common law line of exclusionary cases where identification takes place sometime after the event. See, e. g., Leeper v. United States, 117 U.S.App.D.C. 310, 329 F.2d 878, cert. denied, 377 U.S. 959, 84 S.Ct. 1641, 12 L.Ed.2d 502 (1964) (concurrence) (identification in stationhouse without lineup); Poole v. United States, 97 F.2d 423 (9th Cir. 1938) (same); People v. Caserta, 19 N.Y.2d 18, 277 N.Y.S.2d 647, 224 N.E.2d 82 (1966) (identification of defendant from photograph to buttress credibility); People v. Jung Hing, 212 N.Y. 393, 106 N.E. 105 (1914) (identification at lineup to buttress credibility). The exclusion is warranted in these cases because the reliability of such identifications is uncertain. See generally P. Wall, Eye-Witness Identification in Criminal Cases (1965). Admitting evidence with such questionable probative force, when added to the hearsay dangers, substantially increases the possibility that it will be overvalued by the jury.

■ Hearsay evidence introduced against a defendant in criminal cases should, of course, be closely scrutinized and controlled by the court. The defendant does not have the same discovery opportunities in federal criminal cases as in civil cases; and we recognize the need to afford the criminal defendant the greatest possible protection against false convictions.

■ Nonetheless, hearsay should be admitted where, as here, there is no more satisfactory evidence available, probative force is high, and availability of the hearsay declarant for cross-examination makes the possibility of prejudice slight. The statement of the barmaid identifying defendant was spontaneously made within a few moments of the time the bill was passed and while defendant was still in his place at the bar. It is unlikely that her observation of the man who gave her the bill was mistaken—he was awaiting her return with his change. There was no time for lapse of memory. No reason for her to lie was suggested; in any event, any motive she might have had to falsify, would not have been substantially different at the trial than it was at the time of the event. The process of pointing out the defendant was so simple that an error in communication was improbable. The barmaid was unlikely

to have remained silent if the police had collared an innocent bystander rather than the man she intended to point out.

Danger of the jury's overvaluing the hearsay was reduced by giving specific warning. The court pointed out that the patrolman's statement with respect to the barmaid's identification of the defendant was hearsay, that it was dangerous to rely upon it, and that the jury should evaluate it carefully. No inference with respect to the correctness of the identification arose from defendant's constitutionally protected silence. Cf. Di Carlo v. United States, 6 F.2d 364, 366 (2d Cir. 1925).

In view of the admissibility of the identification evidence pursuant to general principle, it is not necessary to decide whether it falls within a specific recognized hearsay exception. See, e. g., United States v. Nuccio, 373 F.2d 168, 172 (2d Cir. 1967), cert. denied, 387 U.S. 906, 87 S.Ct. 1688, 18 L.Ed.2d 623 (1967) ("When a witness specifically reaffirms the truth of something he has said elsewhere, the earlier statement constitutes evidence as fully as what he says on the stand"); United States v. Borelli, 336 F.2d 376, 391, n. 11 (2d Cir. 1964), cert. denied sub nom. Cinquegrano v. United States, 379 U.S. 960, 85 S.Ct. 647, 13 L.Ed.2d 555 (1965) (where a witness affirms truth of a prior statement it is evidence in chief); United States v. De Sisto, 329 F.2d 929 (2d Cir.), cert. denied, 377 U.S. 979, 84 S.Ct. 1885, 12 L.Ed.2d 747 (1964) (prior identification testimony by a witness before grand jury admissible); Uniform Rules of Evidence 1, 4(b); Morgan, A Suggested Classification of Utterances Admissible as Res Gestae, 31 Yale L.J. 229 (1922); III Wigmore, Evidence § 1018 at pp. 687–688 (3d ed. 1940) (no reason to classify as hearsay extrajudicial statement by person present at trial and subject to cross-examination).

We should not blind ourselves to what the law has learned by bitter experience —identification in court is frequently an almost worthless formality. See, e.

g., authorities collected in United States v. Wade, 388 U.S. 218, 228–229, nn. 6–7, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), particularly P. Wall, Eye-Witness Identification in Criminal Cases, 26–27 (1965). By the time of trial positions have often become so fixed and memory so attenuated and distorted by subsequent events that witnesses seldom make identifications on the basis of their raw recollection of the original event. Their apparent certitude is often misleading and not infrequently less reliable than earlier reactions. We cannot permit the mechanical and unreasoned application of the hearsay rule to deny evidence vital to our search for the truth.

The motion is denied.

So ordered.