## PEOPLE v MALONE

Docket Nos. 94390, 94391. Argued December 1, 1993 (Calendar No. 1). Decided June 14, 1994.

Donald Malone was convicted by a jury in the Detroit Recorder's Court, Thomas E. Jackson, J., of first-degree murder and of possession of a firearm during the commission of a felony. The Court of Appeals, MURPHY, P.J., and CAVANAGH, J. (CONNOR, J., concurring), affirmed, concluding that third-party identification testimony was admissible under MRE 801(d)(1)(C) (Docket No. 120518. See also Docket No. 151188.). The defendant appeals.

In an opinion by Justice BOYLE, joined by Justices BRICKLEY, RILEY, GRIFFIN, and MALLETT, the Supreme Court *held:*

Under MRE 801(d)(1)(C), statements of identification are not hearsay when the identifier is subject to cross-examination.

1. Under rule 801(d)(1)(C), prior statements of identification are not hearsay regardless of whether the out-of-court declaration is denied or affirmed at trial. The statements need not be inconsistent with trial testimony, as under rule 801(d)(1)(A), nor offered to rebut other testimony, as under rule 801(d)(1)(B). As long as the statement is one of identification, rule 801(d)(1)(C) permits its substantive use, provided the person who made the identification is subject to cross-examination. Further, the rule makes no distinction regarding whether the statement is offered by a third party or is a statement by a witness on the stand about something the witness said previously.

2. Because the identifier in this case testified at trial and was subject to cross-examination, testimony by a third-party witness about his statement was properly admitted even though the identifier testified that he did not make the statement.

Affirmed.

Chief Justice CAVANAGH, joined by Justice LEVIN, dissenting, stated that, properly interpreted, MRE 801(d)(1)(C) excludes from the definition of hearsay only the out-of-court identification statements of a person who actually made an earlier identification. Thus, testimony regarding such an out-of-court

REFERENCES

Am Jur 2d, Federal Rules of Evidence §§ 209, 210.
See ALR Index under Hearsay.

statement by a third party who witnessed the identification falls within the definition of hearsay and is not admissible as substantive evidence.

Two types of persons may provide identification testimony· during trial: a person who actually made an extrajudicial identification, and a third party who observed the identifier make the identification. MRE 801(d)(1)(C) provides that an extrajudicial statement is not hearsay if the declarant testifies at trial and is subject to cross-examination concerning the statement, and the statement concerned identification of a person made after perceiving the person.

Although an extrajudicial identification cannot be tested by contemporaneous cross-examination, when it is offered by the identifier at trial, the opposing party can cross-examine the identifier, exposing any weaknesses and uncertainty of the identification and providing an indicia of reliability for the factfinder to judge the accuracy of the identification. When a third party testifies about a prior identification by the identifier, the accuracy of the identification cannot be tested, making it not only unreliable, but lacking in probative value. Thus, third-party identification testimony that bolsters an identification should not be admissible as substantive evidence; rather, consistent with the intent underlying MRE 801(d)(1)(C) and prior Michigan law, such testimony is restricted to the facts and circumstances surrounding the identification. The federal interpretation of FRE 801(d)(1)(C) is repugnant to the intent of the Supreme Court in adopting the Michigan rule and should be rejected.

In this case, the admission of third-party testimony about the identifier's earlier identification as substantive evidence was error. Also, the testimony of additional identifying witnesses was suspect at best. These facts, coupled with the heavy reliance most jurors place on a police officer's testimony, clearly prejudiced the defendant, entitling him to a new trial.

193 Mich App 366; 483 NW2d 470 (1992) affirmed.

EVIDENCE — HEARSAY — STATEMENTS OF IDENTIFICATION.

Statements of identification are not hearsay when the identifier is subject to cross-examination (MRE 801[d][1][C]).

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief, Research, Training, and Appeals, and *Janice M.*

*Joyce Bartee,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *David A. Moran*) for the defendant.

BOYLE, J. The question presented in this case is whether the Michigan Rules of Evidence modify the definition of hearsay to define a prior statement of identification as nonhearsay. Specifically, we must decide whether the trial court acted properly in admitting as substantive evidence the testimony of two witnesses that a witness who denied having identified the defendant at trial had previously identified him at a photographic showup.

We hold that, under MRE 801(d)(1)(C), statements of identification are not hearsay when the identifier is subject to cross-examination.[1] The history of the rule and the goal of promoting reliable fact finding support this conclusion. The decision of the Court of Appeals is affirmed.

I

FACTS AND PROCEDURAL HISTORY

This case arose from the July 26, 1988, shooting death of Orlando Nance that occurred in an alley outside a market in Detroit. The defendant, Donald Malone, was charged with first-degree murder and possession of a firearm during the commission of a felony. Witnesses Robin Lasenby, Carey Jackson, and Melvin Mann each observed individuals running to, or from, the scene of the shooting.

Carey Jackson later identified the defendant at a photographic showup. At trial, however, Carey

---

[1] The dissent concedes that third-party testimony of a prior inconsistent statement is admissible for impeachment. *Post,* p 408, n 19.

Jackson denied having identified the defendant. Other eyewitnesses were also reluctant to testify. Robin Lasenby testified that, although he was not afraid for himself, his mother "[g]ot [him] to make a statement because she felt frightened for her safety or whatever." Defendant Malone "told [Lasenby] that the affair was none of Lasenby's business." Lasenby, who had previously given a statement that unequivocally identified the defendant as the person who got out of the black Omni with a dark object[2] in his hand, testified that the defendant later told him that the incident was "none of [his] business," and that, at that time as well, the defendant had in his possession a dark object.[3] It

---

[2] *Q.* Did you see either one of the people that jumped out of the car with anything in their hands?

*A.* Yes. I saw something, but you know, I really can't say what it was at that time.

*Q.* Which other people had something in their hands?

*A.* Donald.

*Q.* What size was the item that you saw in the defendant's hand?

*A.* I can't really say what size it is because, you know, I was at a distance. I was like walking away in the other direction.

*Q.* Could you tell if it was in his right hand or his left hand?

*A.* No, I can't recall.

*Q.* Can you tell if it was a dark object or light object?

*A.* A dark object, I believe.

*Q.* Now, after you lost sight of Mr. Malone, where did you go right after you saw them jumping out of the car?

*A.* I went to my house on my porch.

[3] *Q.* What was the conversation that the two of you had?

*A.* He just said, I heard you know something. And I said, well, you know, whatever people tell you. I don't have nothing to do with it, that type of thing, you know.

*Q.* Who started the conversation?

*A.* I'm not for sure. I can't recall.

*Q.* Did you walk up to him or did he walk up to you?

*A.* No, I walked towards his car.

*Q.* And what specifically, please, after refreshing your recollection, did the two of you discuss?

*A.* I just told you what we discussed.

*Q.* Did you see anything in Donald Malone's lap at that time?

*A.* Yes.

*Q.* What did you see?

*A.* I couldn't make out what it was because at the time, I was not standing directly up on the car and when Sergeant Bivens asked me, you know what this was and I said yeah; I can't really say what it was.

*Q.* It was a big object or small object?

*A.* It could have been medium sized object.

*Q.* Was it a dark color or light color?

*A.* Dark color.

*Q.* You still live in the neighborhood around Puritan and Pilgrim don't you?

*A.* Uh-huh.

*Q.* Now, did the defendant tell you anything about something you supposedly said?

*A.* No.

*Q.* Did he tell you anything about something he heard?

*A.* No. I just told you he had heard back that I had been talking about something.

*Q.* Did he refer to what the something was?

*A.* No.

*Q.* Did you tell him anything, did you talk about anything?

*A.* No.

*Q.* I am going to direct you to your statement right here. Read that to yourself, please.

*A.* Yeah, I see what you are talking about.

*Q.* What did you tell Donald Malone?

*A.* I said, you know I can't, it's none of my business. I don't have anything to do with it whatsoever.

*Q.* Did he tell you what he did was really none of your business?

*A.* Yeah.

*Q.* Did you tell him something about what you were talking about was going no further than right here?

*A.* Yeah, I said that.

*Q.* Is that when you noticed an object in his lap?

*A.* No, but I couldn't see because I told you all the time I was standing directly up by the car.

*Q.* Shortly after that, were you subpoenaed to come to Court for a preliminary hearing?

* * *

*Q.* (By Ms. Worthy): Did you call Sergeant Bivens?

*A.* Yes. I heard he had been looking for me and I called him and told him I wasn't coming to Court.

*Q.* Why did you tell him you weren't coming to Court?

*A.* I didn't feel it was no reason for me to come. I didn't want to come.

*Q.* Is this after you had seen Donald Malone in the street?

*A.* Yes, it was sometime after that I believe.

was only after that conversation that Lasenby "didn't want to come" to court.

Over the defendant's objections, attorney James Hall, the attorney appointed to protect the defendant's right to a fair showup, testified that Carey Jackson identified defendant Malone as "the guy who had the gun," and signed a statement recording this identification. Attorney Hall also testified that the photographic showup was fair. Officer James Bivens of the Detroit Police Department also testified and confirmed Jackson's identification and signed statement. The trial court held that the testimony of both Officer Bivens and Attorney Hall was not limited to impeachment of Jackson's trial testimony and was admissible as substantive evidence under MRE 801(d)(1)(C).[4] The jury convicted the defendant of first-degree murder and possession of a firearm during the commission of a felony.

The Court of Appeals affirmed the defendant's convictions. 193 Mich App 366; 483 NW2d 470 (1992). The Court rejected the defendant's argument that the identification testimony was inadmissible hearsay. Judge CONNOR concurred only because he felt compelled to apply the rule announced in *People v Newcomb,* 190 Mich App 424,

---

*Q.* Is that why you were brought into this Court because you didn't show up for the first Court hearing?

*A.* Which time are you talking about?

*Q.* You told Sergeant Bivens you weren't going to show up for a Court hearing?

*A.* Yeah. I felt I didn't have to show up because I wasn't subpoenaed. If I was subpoenaed, it would have been different then. Just like he subpoenaed me here, I showed back up.

*Q.* In any event, you didn't show up for that hearing, did you?

*A.* No.

[4] The trial court noted that if the identification procedure was unfair or caused bias, the court could exclude it. The defendant does not contest the fairness of the identification procedures.

429-430; 476 NW2d 749 (1991), as required by Administrative Order No. 1990-6, 436 Mich lxxxiv. See 193 Mich App 372 (CONNOR, J., concurring). This Court granted the defendant's application for leave to appeal on March 16, 1993. 442 Mich 867.

## II

### THE TESTIMONY IS NOT HEARSAY UNDER MRE 801(d)(1)(C)

The testimony of Attorney Hall and Officer Bivens about the prior statement of witness Carey Jackson is not hearsay. On this point, the Rules of Evidence could not be more clear:

> A statement is not hearsay if . . . [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . one of identification of a person made after perceiving him . . . . [MRE 801(d)(1)(C).]

MRE 801(d) is an outgrowth of attempts to abandon the orthodox rule that prior statements of a witness were admissible only for impeachment or under a recognized exception to the hearsay rule. The proponents of change, among them Wigmore and Learned Hand, countered the orthodox view that substantive use was objectionable because the prior statement when made was not under oath, subject to cross-examination, or in the presence of the trier of fact. They observed that the oath was no longer the principal safeguard of trustworthiness, that the interests of cross-examination were met by the declarant's presence at trial, and that the trier's advantage of observing the demeanor of the witness was also satisfied. In Hand's classic statement:

If, from all that the jury see of the witness, they conclude that what he says now is not the truth, but what he said before, they are none the less deciding from what they see and hear of that person and in court. [*Di Carlo v United States*, 6 F2d 364, 368 (CA 2, 1925).]

The reformers' views are represented in the Model Code of Evidence Rule 503, which abolishes the orthodox rule and provides that all prior statements are admissible if the declarant is found to be "present and subject to cross-examination." 2 McCormick, Evidence (4th ed), § 251, p 118. However, concern that the Model Code approach would produce the manufacture of prior statements led to an intermediate position taken by the advisory committee on the Federal Rules of Evidence,[5]

exempting from classification as hearsay certain prior statements thought by circumstances to be free of the danger of abuse. The exempt statements are (A) inconsistent statements, (B) consistent statements when admissible to rebut certain attacks upon the credibility of the witness, and (C) statements of identification. [2 McCormick, *supra,* p 120.]

The Congress modified the original proposal, and the structure of MRE 801(d), as ultimately adopted by this Court, parallels FRE 801(d), as modified. The rule clearly indicates the circumstances in which prior statements are defined as not hearsay: where the prior statement was made under oath and is inconsistent with the witness' testimony,[6]

[5] The advisory committee's approach was also proposed by the Michigan Committee on the Rules of Evidence.

[6] Congress modified FRE 801(d)(1)(A) to define an inconsistent statement as a statement given "under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition . . . ." The Michigan Supreme Court adopted the federal rule as modified.

MRE 801(d)(1)(A); where the prior statement is consistent and offered to rebut, MRE 801(d)(1)(B); and where the prior statement is one of identification, MRE 801(d)(1)(C). Unlike subrules (A) and (B) of Rule 801(d)(1), subparagraph (C) does not require laying a foundation other than that the witness is present and found to be available for cross-examination.

Thus, statements of identification are not limited by whether the out-of-court declaration is denied or affirmed at trial. There is no requirement "of inconsistency" as in subparagraph (A), nor is there a condition of previous impeachment as in subparagraph (B). As long as the statement is one of identification, Rule 801(d)(1)(C) permits the substantive use of any prior statement of identification by a witness as nonhearsay, provided the witness is available for cross-examination. 4 Weinstein & Berger, Evidence, ¶ 801(d)(1)(C)[01], pp 801-214 to 801-215.

All that is contemplated is an out-of-court statement of identification (which is simply a particular type of prior statement) and that the out-of-court declarant be subject to cross-examination "concerning" the statement. Thus, it is clear that the effect of both MRE 801(d)(1)(A) and MRE 801(d)(1)(B) is to change Michigan law, and the committee notes confirm this. 399 Mich 1003. Further, there is no distinction regarding whether the out-of-court statement is offered by a third party or is the statement of identification of a witness on the stand regarding something the witness previously said. Under the orthodox definition of hearsay, an out-of-court statement offered for the truth is inadmissible, whether offered through its maker or a third party. A statement of identification defined

as nonhearsay is substantively admissible under Rule 801, without regard to its proponent.[7]

Because Mr. Jackson testified regarding the subject of identity at trial, and was subject to cross-examination regarding his identification, the testimony was properly admitted.

### III

#### THE DRAFTING HISTORY OF MRE 801(d)(1)(C)

A full review of the committee commentary on the Michigan Rules of Evidence confirms that the testimony in question is not hearsay. After first stating that MRE 801(d)(1)(A) and (B) were "inconsistent with prior Michigan law" that defined prior inconsistent statements and consistent statements as hearsay, see, e.g., *People v Hallaway,* 389 Mich 265, 271-279; 205 NW2d 451 (1973) (opinion of BRENNAN, J.), the committee summarized the effect of Rule 801(d)(1)(C):

> MRE 801(d)(1)(C) is consistent with prior Michigan law in admitting testimony by a witness as to his own prior statement of identification of a person made after perceiving him. *People v Poe,* 388 Mich 611; 202 NW2d 320 (1972); *People v Londe,* 230 Mich 484; 203 NW 93 (1925). [399 Mich 1004.]

The committee's statement that MRE 801(d)(1)(C) was consistent with prior law "*admitting* testimony by a witness as to his own prior statement . . . ," *id.* (emphasis added), does not mention previous Michigan law *excluding* a wit-

---

[7] The statement of identification is not hearsay. The witness' perception of the act is tested under oath for the benefit of the factfinder. Indeed, as Judge MARK CAVANAGH recognized in the Court of Appeals, if the rule were read to preclude third-party testimony of a statement of identification, it would not address the recanting witness problem because, by definition in this situation, the only party who can introduce the evidence is the third party. 193 Mich App 370.

ness' prior inconsistent statements as hearsay.[8] That line of authority was overruled in the committee's version of MRE 801(d)(1)(A).[9] Since the committee's proposals would have made all prior inconsistent statements admissible as substantive evidence without limitation, the only category of statements of identification evidence not contemplated by the proposal was a prior statement of identification admitted by the witness. Since *People v Poe* and *People v Londe, supra,* admitted as substantive evidence the prior statement of identification of a witness affirming his in-court identification, the commentary to FRE 801(d)(1)(A), (B), and (C) accurately describes the changes proposed in Michigan law.

The Committee Note also describes MRE 801(d)(1)(C) as identical to its federal counterpart. 399 Mich 1002-1003. According to the General Comment, when a particular rule is drawn from "the corresponding Federal rule, the Michigan Committee Note usually does not restate the rule's background or comment on its meaning. Rather the Federal Advisory Committee Notes and Congressional reports are allowed to speak for them-

---

[8] The committee's statements regarding "Impact on Prior Michigan Law" merely indicate the committee's perceptions of the correspondence, or lack of it, between the rules and prior Michigan law. Prepared as an aid to Bench and Bar in the transition from prior Michigan law to these rules, these statements are descriptive only, and not prescriptive. They are not to be carried forward as a gloss on the new rules. [399 Mich 955.]

[9] This rule provided that

[a] statement is not hearsay if . . . [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with his testimony . . . .

As noted, however, this Court did not adopt this rule as written, but instead modified it to match its federal counterpart. Cf. n 5.

selves." 399 Mich 955.[10] The Report of the Senate
Judiciary committee addressed this precise situa-
tion in explaining why the rule is desirable:

> "The identification occurs before [the witness']
> recollection has been dimmed by the passage of
> time. Equally as important, it also takes place
> before the defendant or some other party has had
> the opportunity, through bribe or threat, to influ-
> ence the witness to change his mind." [4 Weinstein
> & Berger, *supra,* p 801-6, quoting the Report of the
> Committee on the Judiciary, Senate, 94th Cong,
> 1st Sess, No 94-199, pp 2-4 (1975).]

We assume that the justices of this Court were
familiar with the interpretative materials, leading
commentators, the extensive case law preceding
adoption of the federal rules that admitted first- or
third-party identification without limitation,[11] and
the federal rule and its effect on common-law
practice. Indeed, whatever the views of the individ-
ual justices[12] regarding the arguments for and

---

[10] Consistent with this intention, this Court has continued to look to
the commentary on the Federal Rules of Evidence, see, e.g., *People v
VanderVliet,* 444 Mich 52, 60, n 7; 508 NW2d 114 (1993), and
decisions interpreting these rules, see, e.g., *Solomon v Shuell,* 435
Mich 104, 108-139, 140-153; 457 NW2d 669 (1990) (opinions of ARCHER
and BOYLE, JJ.).

[11] See, e.g., cases collected in anno: *Admissibility of evidence as to
extrajudicial or pretrial identification of accused,* 71 ALR2d 449.

[12] *People v Sanford,* 402 Mich 460; 265 NW2d 1 (1978), was pending
at the time this Court adopted the Michigan Rules of Evidence. None
of the five justices who voted in *Sanford* that it was not error to admit
the police officer's testimony suggested the limitation that the dissent
would read into the rule.

Justice RYAN wrote separately to point out that, although in his
view prior law would have excluded the identification for substantive
purposes, MRE 801(d)(1)(C), like its federal counterpart, allows the
introduction as long as the identifier testifies at trial and is subject to
cross-examination. *Id.* at 497. Significantly, and contrary to the defen-
dant's position, Justice RYAN stated that, in adopting the rule, "the
Court implicitly acknowledges . . . that the hearsay character and
cumulative effect of the testimony of a *third person* to an out-of-court
identification, as well as that given by the identifier himself, is not so

against retention or reform of the common-law
rules of limited admissibility, it is beyond dispute
that at least four justices were persuaded that
previously inadmissible statements should be de-
fined as nonhearsay, MRE 801(d)(2)(D), and that
statements previously admitted only for impeach-
ment or support should be admitted as substantive
evidence, MRE 801(d)(2)(A) and MRE 801(d)(2)(B).
The Court clearly cast its vote against orthodoxy
and in favor of "the promotion of growth and
development in the law of evidence." MRE 102.

## IV

### THIS TESTIMONY DOES NOT PRESENT
### THE DANGERS OF HEARSAY

As Professor Wigmore observes in explanation of
FRE 801(d)(1):

> The witness who has told one story aforetime
> and another today has opened the gates to all the
> vistas of truth which the common law practice of
> cross-examination and reexamination was in-
> vented to explore. The reasons for the change of
> face, whether forgetfulness, carelessness, pity, ter-
> ror, or greed, may be explored by the two question-
> ers in the presence of the trier of fact, under oath,
> casting light on which is the true story and which
> the false. It is hard to escape the view that evi-
> dence of a prior inconsistent statement, when
> declarant is on the stand to explain it if he can,
> has in high degree the safeguards of examined
> testimony. In addition, allowing it as substantive
> evidence pays a further dividend in avoiding a

inherently prejudicial that it must necessarily be excluded in all
cases." *Id.* (Emphasis added.)

The issue in *Sanford* and the other cases cited by the dissent is the
admissibility of third-party testimony "bolstering" statements of iden-
tification, i.e., where the identifier has identified the defendant at
trial. See also *People v Mead,* 50 Mich 228; 15 NW 95 (1883), and
*People v Londe* and *People v Poe, supra.*

limiting instruction quite unlikely to be heeded by a jury. [2 McCormick, *supra,* § 251, p 120.]

The United States Supreme Court considered the asserted dangers of hearsay in *California v Green,* 399 US 149; 90 S Ct 1930; 26 L Ed 2d 489 (1970). The question there was whether the trial court properly admitted as substantive evidence a statement to the police and testimony at preliminary examination that the defendant supplied marijuana to a witness, where the witness became markedly evasive at trial and claimed he could not remember the actual events.

The Court held that admission of the declarant's out-of-court statements at trial does not violate the Confrontation Clause as long as the declarant testifies as a witness and is subject to full and effective cross-examination. In reaching this conclusion, the Court observed that the alleged dangers of admitting the out-of-court statement are not present when the witness is under oath and forced to submit to cross-examination and the jury is allowed to observe the witness' demeanor in assessing his credibility.

> It is, of course, true that the out-of-court statement may have been made under circumstances subject to none of these protections. But if the declarant is present and testifying at trial, the out-of-court statement for all practical purposes regains most of the lost protections. If the witness admits the prior statement is his, or if there is other evidence to show the statement is his, the danger of faulty reproduction is negligible and the jury can be confident that it has before it two conflicting statements by the same witness. Thus, as far as the oath is concerned, the witness must now affirm, deny, or qualify the truth of the prior statement under the penalty of perjury . . . . [399 US 158-159.]

Addressing the claim that the jury could not evaluate the declarant's demeanor when he first made his out-of-court statement, the Court stated:

> The witness who now relates a different story about the events in question must necessarily assume a position as to the truth value of his prior statement, thus giving the jury a chance to observe and evaluate his demeanor as he either disavows or qualifies his earlier statement. The jury is alerted by the inconsistency in the stories, and its attention is sharply focused on determining either that one of the stories reflects the truth or that the witness who has apparently lied once, is simply too lacking in credibility to warrant its believing either story. [*Id.* at 160.]

Finally, to the extent that the orthodox rule rested on the value of contemporaneous cross-examination, the Court observed in words equally applicable here:

> The main danger in substituting subsequent for timely cross-examination seems to lie in the possibility that the witness' "[f]alse testimony is apt to harden and become unyielding to the blows of truth in proportion as the witness has opportunity for reconsideration and influence by the suggestions of others, whose interest may be, and often is, to maintain falsehood rather than truth." . . . That danger, however, disappears when the witness has changed his testimony so that, far from "hardening" his prior statement has softened to the point where he now repudiates it. [*Id.* at 159.]

In *United States v Owens,* 484 US 554, 561; 108 S Ct 838; 98 L Ed 2d 951 (1988), nearly twenty years later, the Supreme Court upheld the admission of a prior identification under FRE 801(d)(1)(C), and the Confrontation Clause. The Court con-

cluded that the opportunity for cross-examination
is not denied when the witness testifies about his
current belief, the basis for which he cannot recall,
or when the witness' past belief is introduced and
he is unable to recollect the reason for that past
belief. In both, the foundation for the belief (cur-
rent or past) cannot effectively be elicited, but
other means of impugning the belief are available.
*Id.*[13] Writing for the Court, Justice Scalia inter-
preted the identical language at issue here as
requiring only that the declarant take the stand
and answer questions under oath:

> It seems to us that the more natural reading of
> "subject to cross-examination concerning the state-
> ment" includes what was available here. Ordinar-
> ily a witness is regarded as "subject to cross-
> examination" when he is placed on the stand,
> under oath, and responds willingly to
> questions. . . . Rule 801(d)(1)(C), which specifies
> that the cross-examination need only "concer[n]
> the statement," does not on its face require more.
> [*Id.* at 561-562.]

We, too, conclude that a statement of identifica-
tion is admissible under MRE 801(d)(1)(C) if a
witness is present in court and under oath and is
considered subject to cross-examination about his

---

[13] The claim that this requirement was not satisfied because the
declarant denied making the statement seems to rest on the assump-
tion that unless the witness admits the statement, there is nothing
for the cross-examiner to cross-examine. It fails to appreciate, how-
ever, that when the declarant denies making the prior identification,
the defendant has received all the benefit that cross-examination can
produce:

> The most successful cross-examination at the time the prior
> statement was made could hardly hope to accomplish more
> than has already been accomplished by the fact that the
> witness is now telling a different, inconsistent story, and—in
> this case—one that is favorable to the defendant. [*California v
> Green, supra* at 159.]

prior position. The jury can determine the credibility of a disavowal as well as his present position. Likewise, the third party who is under oath also is subject to cross-examination regarding the circumstances of the identification.[14]

V

## AUTHORITATIVE SOURCES INTERPRETING THE PARALLEL FEDERAL RULE

Authorities considering this precise question under Federal Rule of Evidence 801(d)(1)(C) overwhelmingly agree that third-party testimony about a prior statement of identification is not hearsay. Judge Weinstein states that "if at the trial the eyewitness fails to remember or denies that he made the identification, the previous statement of the eyewitness can be proved by the testimony of a person to whom the statement was made, and the statement can be given substantive effect." 4 Weinstein & Berger, Evidence, ¶ 801(d)(1)(C)[01], p 801-222. As Judge Henry Friendly observed the year before MRE 801(d)(1) was adopted: "The purpose of the rule was to permit the introduction of identifications made by a witness when memory was fresher and there had been less opportunity for influence to be exerted upon him." *United States v Marchand,* 564 F2d 983, 996 (CA 2, 1977). Elaborating on why the prior identification was properly admitted in that case, he explained that outside influence "was one plausible explanation of the

---

[14] When A testifies that on a prior occasion B pointed to the accused and said, "That's the man who robbed me," the testimony is clearly hearsay. If, however, B is present in court, testifies on the subject of identity, and is available for cross-examination, a case within [FRE 801(d)(1)(C)] is presented. Similarly, if B has himself testified to the prior identification. [2 McCormick, *supra*, § 251, p 122.]

loss of recollection of the identifying witness
. . . ." *Id.* at 996, n 23. See also *United States v
Lewis,* 565 F2d 1248, 1251-1252 (CA 2, 1977), cert
den 435 US 973 (1978). *United States v Jarrad,* 754
F2d 1451, 1456 (CA 9, 1985), cert den 474 US 830
(1985).

While this Court is not bound by these decisions,
because of the parallel purpose and similar lan-
guage of the state and federal rules, they are
highly persuasive. Like its federal counterpart,
MRE 801(d)(1)(C) permits the jury to assess the
substantive worth of a prior statement of identifi-
cation where the identifying witness fails, refuses,
or reaffirms a prior statement of identification at
trial.

## VI

### THE FALLACY OF THIRD-PARTY ANALYSIS

In Michigan, a distinction was drawn at common
law between a party's testimony affirming his own
prior identification and the testimony of a third
party corroborating the witness' out-of-court iden-
tification. The former was admissible for the truth
of the matter. The latter was not. Because this
distinction has been the basis for difference of
opinion in the Court of Appeals regarding the
proper interpretation of MRE 801(d)(1)(C),[15] a brief
discussion of the common-law rules is in order.
The history of those rules reveals that the distinc-
tion arose from early efforts to reform the rigid

[15] Most recently, *People v McConnell,* 124 Mich App 672, 679-680;
335 NW2d 226 (1983), *People v Jones,* 144 Mich App 1, 4-5; 373 NW2d
226 (1985), and *People v Michael,* 181 Mich App 236, 239-241; 448
NW2d 786 (1989), have held that identification statements do not fall
within MRE 801(d)(1)(C) when a third party is testifying. Panels have
applied the rule correctly, however, in *People v McCurdy,* 185 Mich
App 503, 505-506; 462 NW2d 775 (1990), *People v Newcomb,* 190 Mich
App 424, 429-430; 476 NW2d 749 (1991), and this case.

orthodox rule of hearsay, and should not be read as a limitation on what statements are not hearsay.

It bears repeating here that a statement of identification is merely one species of a prior statement. All prior statements, whether offered through the declarant or a third party,[16] were hearsay under the orthodox definition of hearsay and were inadmissible except under a recognized exception or for impeachment or support.

Third-party identification testimony, like other prior statements, was admissible on the issue of credibility. Thus, if a prior statement, including a prior statement of identification, was inconsistent with trial testimony, it could be admitted to impeach. If adopted as true by the witness, it was admitted as substantive evidence. *Ruhala v Roby*, 379 Mich 102, 120; 150 NW2d 146 (1967) (opinion of BRENNAN, J.). Likewise, if the tenor of cross-examination suggested that a witness' testimony was a recent fabrication, a prior consistent statement, including one of identification, was admissible in support of credibility.

Properly understood, then, under the orthodox definition of hearsay: (1) all prior out-of-court statements of identification were hearsay, but prior statements offered to prove that the statement was made, irrespective of its truth, were admitted where relevant to credibility; (2) extrinsic evidence of prior inconsistent statements of identification was admissible for impeachment; (3) prior consistent statements of identification were admissible to rehabilitate; and (4) where the prior statement of a witness agreed with his testimony, prior

---

[16] The third-party statement of identification testimony was not excluded at common law because identification testimony was unreliable. In this connection, the dissent has mixed two dissimilar lines of analysis, the definition of hearsay and the supposed unreliability of identification testimony.

consistent statements were simply irrelevant bolstering because prior statements were hearsay and not admissible for the truth of the matter, but only for credibility. *People v Hallaway, supra,* 389 Mich 276-277 (BRENNAN, J., separate opinion).[17]

More than one hundred years ago, however, Michigan created a common-law exception to the orthodox definition of hearsay and admitted first-party statements of identification for the truth of the matter. In *People v Mead,* 50 Mich 228; 15 NW 95 (1883), Justice COOLEY approved admission of a prior statement of identification for the truth of the matter, where the witness made an in-court identification. Otherwise, Michigan common law generally followed the orthodox rule that prior statements were admitted only on a proper showing that they were relevant to credibility. See *People v Jolly,* 193 Mich App 192, 195; 483 NW2d 679 (1992). The Michigan rule of first-party identification thus appears to be a hundred-year-old precursor of a break with orthodoxy.[18]

A limiting construction of MRE 801(d)(1)(C) cannot be inferred from the fact that the Michigan rule allowed the substantive use of first-party testimony regarding a prior statement of identification. The exception is historically significant, but otherwise irrelevant. Indeed, to the extent that an

_____

[17] 1 McCormick, *supra,* § 47, p 172, n 1. Exclusion was justified by the saving of time and avoiding a defense of the witness before the need for one appeared.

[18] Justice COOLEY is also credited with having originated the notion that there were situations in which it would outrage "common sense" to limit prior consistent statements solely to rebut fabrication. See *United States v Rubin,* 609 F2d 51, 66-67 (CA 2, 1979) (Friendly, J., concurring) (citing *Stewart v People,* 23 Mich 63, 74-76 [1871]). And as this Court is well aware, the Michigan Supreme Court also early on adopted a first complaint exception to the hearsay rule on the basis of the common-sense notion that if a jury did not learn of a fresh complaint in a rape case, it would suspect the credibility of the victim. See *People v Gage,* 62 Mich 271; 28 NW 835 (1886).

historical approach sheds light on the present inquiry, history shows that the justices of this Court were not hide bound to the orthodox approach. In fact, to read the common-law exception to hearsay recognized in *Mead* as limiting prior statements of identification now defined as non-hearsay illogically converts the historical exception to hearsay into the contemporary definition of what is not hearsay.

Finally, a distinction between first- and third-party testimony under MRE 801(d)(1)(C) cannot rest on the premise that the third party cannot credibly provide the trier of fact with facts the third party knows to be true. It would follow from this premise that a third party cannot testify to any extrajudicial statement of a witness because, by definition, the third party does not know it to be true. Because a third party can not vouch for the accuracy of an inconsistent statement under MRE 801(d)(1)(A) or of a consistent statement under MRE 801(d)(1)(B), any more than a third party can vouch for the accuracy of a statement of prior identification, the premise would simply emasculate the redefinition of hearsay adopted in Rule 801.

The common-law distinction between first- and third-party testimony of an out-of-court statement of identification was made to escape the orthodox definition of hearsay, which precluded prior statements unless relevant to credibility. There is no basis in logic or policy to employ the escape route from orthodoxy as a vehicle for its reestablishment. The current rule simply makes much of what was previously admissible in Michigan only to impeach or rebut, admissible for the truth of the matter. Statements of identification are no longer defined as hearsay. Subject to the trial

court's authority under MRE 403,[19] the distinction between first- and third-party statements of prior identification does not limit substantive admissibility.

For the foregoing reasons, the decision of the Court of Appeals is affirmed.

BRICKLEY, RILEY, GRIFFIN, and MALLETT, JJ., concurred with BOYLE, J.

CAVANAGH, C.J. (*dissenting*). Because the majority opinion compliantly embraces the federal interpretation of the Federal Rules of Evidence, disregarding Michigan precedent and policy, I respectfully dissent. Properly interpreted, MRE 801(d)(1)(C) excludes from the definition of hearsay only the out-of-court identification statements of the person who actually made the earlier identification. Thus, testimony of the out-of-court statement by a third party who witnessed the identification falls within the definition of hearsay and is not admissible as substantive evidence. MRE 802.

I

Two types of persons may provide identification testimony during trial: (1) the person who actually made the extrajudicial identification (the "identifier"), and (2) a third party who observed the identifier make the out-of-court identification. Generally, the objections asserted regarding the admission of the extrajudicial identification concern (1) the hearsay nature of the testimony, and (2) the effect of improperly bolstering the identifier's in-

---

[19] Because the parties failed to cite MRE 403, this Court need not reach the issue whether courts may properly exclude bolstering testimony under MRE 403. See *People v Prophet,* 101 Mich App 618; 300 NW2d 652 (1980).

court identification. *People v Sanford,* 402 Mich 460, 486; 265 NW2d 1 (1978).

MRE 801(d)(1)(C) governs the admissibility of extrajudicial identification testimony. The rule states:

> (d) *Statements which are not hearsay.* A statement is not hearsay if—
> (1) *Prior statement of witness.* The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . (C) one of identification of a person made after perceiving him . . . .

## II

When determining the proper application of a Michigan rule of evidence, the rules of statutory construction are instructive. When a statutory provision is clear and unambiguous, the court will apply the provision as written.[1] *Gilroy v General Motors Corp (After Remand),* 438 Mich 330, 341;

---

[1] I take issue with my sister's declaration that the language of MRE 801(d)(1)(C) "could not be more clear." See *ante,* p 375. The language of MRE 801(d)(1)(C) fails to resolve which type of identification testimony is excluded from the definition of hearsay. The rule's ambiguity is further evidenced by the Court of Appeals split on its proper application. While some panels admit only the identification testimony of the identifying witness, limiting third-party testimony to the facts and circumstances of the prior identification, *People v Michael,* 181 Mich App 236, 241; 448 NW2d 786 (1989), *People v Turner,* 120 Mich App 23, 38; 328 NW2d 5 (1982), *People v Price,* 112 Mich App 791, 801-803; 317 NW2d 249 (1982), *People v Mock,* 108 Mich App 384, 387-388; 310 NW2d 390 (1981), *People v Prophet,* 101 Mich App 618, 621-623; 300 NW2d 652 (1980), and *People v Horton,* 98 Mich App 62, 71; 296 NW2d 184 (1980), other panels have not limited third-party identification testimony, instead allowing the third-party to testify of the extrajudicial identification, *People v Newcomb,* 190 Mich App 424; 476 NW2d 749 (1991), *People v McCurdy,* 185 Mich App 503, 505; 462 NW2d 775 (1990), *People v Beam,* 125 Mich App 289; 335 NW2d 684 (1983), *People v McConnell,* 124 Mich App 672, 679-680; 335 NW2d 226 (1983), *People v Turner,* 116 Mich App 421; 323 NW2d 425 (1982), and *People v Adams,* 92 Mich App 619; 285 NW2d 392 (1979).

475 NW2d 271 (1991). In the event that the Court is required to construe a provision, the Court must discover and effectuate the intent of the formulating body. *Storey v Meijer, Inc,* 431 Mich 368, 376; 429 NW2d 169 (1988). The Court must ascertain and apply a reasonable construction that promotes the purpose of the provision.

A

This Court adopted the Michigan Rules of Evidence in 1978. A preview of the proposed rules included the drafting committee's comments regarding the rules' effect on prior Michigan law. While the committee's comments are in no way binding upon this Court, they are nevertheless instructive with respect to this Court's intent in adopting the rules.

While the committee recognized the similarity between the language of proposed MRE 801(d)(1)(C), and its federal counterpart, FRE 801(d)(1)(C), it did not indicate that the application of the Michigan rule would mirror the application of the federal rule. To the contrary, the committee, in its statement regarding MRE 801(d)(1)(C)'s effect on prior Michigan law, expressly acknowledged that the rule was consistent with prior Michigan law.[2]

> MRE 801(d)(1)(C) *is consistent with prior Michigan law in admitting testimony by a witness as to his own prior statement of identification of a person made after perceiving him. People v Poe,* 388

---

[2] It is important to note that the committee expressly indicated the rules that modified or changed prior Michigan law. For an example, see the comments concerning MRE 801(d)(1)(A) and (B), 399 Mich 1003 (1977). Furthermore, the committee explicitly acknowledged when a proposed rule was "generally consistent," permitting some room for deviation from the prior Michigan position. For an example, see the comments concerning MRE 801(d)(2)(A) and MRE 803(3), *id.* at 1004, 1010.

Mich 611; 202 NW2d 320 (1972); *People v Londe,*
230 Mich 484; 203 NW 93 (1925). [399 Mich 1004
(1977). Emphasis added.]

An identifier's courtroom testimony of an earlier
extrajudicial identification constituted hearsay by
definition,[3] nevertheless, this Court allowed its use
as substantive evidence before the adoption of
MRE 801(d)(1)(C). However, the Court limited the
admissibility of third-party identification testi-
mony, generally excluding it from use as substan-
tive evidence.

Admittedly, before today this Court had not
announced whether third-party identification testi-
mony is admissible as substantive evidence when
the identifier has either denied making or failed to
recall the identification. The Court has, however,
expressed its pre-MRE position regarding the use
of third-party identification testimony to bolster
the identifier's identification. In *People v Mead,* 50
Mich 228; 15 NW 95 (1883), the victim of a bur-
glary identified the defendant on the street in the
presence of her husband. At trial, the woman
identified the defendant as the burglar, and testi-
fied about her previous out-of-court identification.
The victim's husband also testified. The prosecutor
asked the husband if his wife had recognized

---

[3] Hearsay is defined as an extra-judicial statement which is
offered for the purpose of proving the truth of the thing said.
While some writers have suggested that the hearsay rule need
not be applied to the extra-judicial statements of a declarant,
who later testifies as a witness, this Court has not recognized
such an exception to the hearsay rule. Of course, prior inconsis-
tent statements of a witness can be shown for impeachment
purposes. . . . Where the prior extra-judicial statement of a
witness agrees with his testimony, the out-of-court remark is
self-serving, and is not generally permitted under any estab-
lished exception to the hearsay rule. [*People v Hallaway,* 389
Mich 265, 275-276; 205 NW2d 451 (1973) (opinion of BRENNAN,
J.).]

anyone on the street, and, if so, whom. The husband responded that his wife had recognized the defendant as the robber. The trial court struck the husband's answer from the record, and this Court upheld the trial court's action. While the identifier's repetition of her extrajudicial identification was properly admitted as substantive evidence, the third-party identification testimony was inadmissible. Justice COOLEY explained:

> [T]he witness, not content with giving a simple answer to it, added what in effect was a statement that his wife told him she recognized the respondent as the burglar. *The statement was hearsay, and it was likely to be exceedingly mischievous, for much depended in the case upon this recognition.* [*Id.* at 230. Emphasis added.]

Remaining faithful to this premise, the Court restated the standard regarding the admissibility of extrajudicial identification testimony in *Londe.* While an identifier may testify regarding an extrajudicial identification, a third party who witnessed the extrajudicial identification may only testify regarding the "circumstances [under which] the identification was made." *Id.* at 487.

Almost fifty years later, this Court reaffirmed the *Londe* holding excluding third-party evidence of extrajudicial identifications. *People v Poe, supra* at 618-619. *Poe* arose from a robbery of a supermarket. Four witnesses of the crime attended pretrial lineups. The police notes concerning the lineups indicated that two of the four eyewitnesses positively identified defendant Poe as the robber; one eyewitness stated that Poe looked like the robber, but he could not assert that in court; and the fourth eyewitness identified someone other than the defendant. Despite the lineup results,

each witness testified at trial that Poe was the robber.

While the Court approved of the admission of the police officer's testimony and lineup notes to reflect the hesitation by one witness and the misidentification by the other,[4] it prohibited their use as substantive evidence to reveal the consistent pretrial identification made by the two remaining eyewitnesses. The Court, relying on *Londe,* restricted third-party identification testimony to " 'what took place' and under 'what circumstances the identification was made . . . .' "[5] *Poe* at 618. Unlike *Londe,* however, the *Poe* Court defined inadmissible third-party identification testimony as testimony concerning "the nature or quality of the identification." *Poe* at 618.

The status of the Michigan rule remained settled despite this Court's plurality opinion in *Sanford.* While the entire Court concluded that the admission of the third-party identification testimony of the extrajudicial identification did not require reversal of the defendant's conviction, the Court split regarding *why* the admission did not compel relief.[6]

---

[4] "The use of these documents to refresh the witnesses' memory and to test their reliability was proper. See, generally, 2 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 598, p 775." *Poe* at 617. Refreshing a witness' memory, with hearsay evidence, is permitted as a recognized exception to the hearsay rule. See, generally, *Jaxon v Detroit,* 379 Mich 405; 151 NW2d 813 (1967), and MRE 803(5). Furthermore, use of the notes to impeach a witness' trial testimony, is similarly an accepted procedure. Although, in such an instance, the trial court should instruct the jury regarding the evidence's limited purpose. MRE 105.

[5] In addition, the *Poe* Court did not disturb the trial court's decision to admit the identifying witnesses' testimony of their own extrajudicial identification. *Poe* at 618-619.

[6] This Court adopted the Michigan Rules of Evidence after the *Sanford* opinion was written, but before it was signed. The common-law rules governed the disposition in *Sanford;* thus, any discussion regarding the newly enacted Michigan Rules of Evidence can only be characterized as nonbinding dicta. See *McNally v Wayne Co Bd of Canvassers,* 316 Mich 551, 557-558; 25 NW2d 613 (1947).

The clear rule in Michigan is that a majority of the Court must agree on a ground for decision in order to make that binding precedent for future cases. If there is merely a majority for a particular result, then the parties to the case are bound by the judgment but the case is not authority beyond the immediate parties. [*People v Anderson,* 389 Mich 155, 170; 205 NW2d 461 (1973).]

The *Mead/Londe/Poe* trilogy firmly established Michigan's pre-MRE position regarding the admissibility of identification testimony. An identifier's testimony of an extrajudicial identification, albeit hearsay by definition, is admissible as substantive evidence. Third-party identification testimony offered to bolster the identifier's identification, however, is limited to the circumstances surrounding the identification, prohibiting testimony about the content of the identification as substantive evidence.

Justice BOYLE's interpretation of the rule contradicts the drafting committee's comments that "MRE 801(d)(1)(C) *is consistent with prior Michigan law . . . .*" 399 Mich 1004. (Emphasis added.) This Court repeatedly held that a third party, who witnessed an extrajudicial identification, may only testify about the "circumstances [under which] the identification was made." *Londe, supra* at 487. See also *Mead* and *Poe.* The Court refused to allow a third party to testify of the identification to bolster the identifier's identification. Nevertheless, Justice BOYLE's interpretation permits the admission of the prohibited testimony. To temper this fundamental anomaly, Justice BOYLE notes in a footnote that trial courts *may* exclude the bolstering testimony via MRE 403. *Ante,* p 390, n 19. This is a far cry from the previously mandated exclusion of

such evidence. With a few keystrokes, my sister has eradicated a century-old rule that was intended to remain consistent.

Furthermore, a vivid or eccentric imagination is not required to reach the conclusion that if this Court consistently excluded third-party identification testimony that merely bolsters the identifier's identification, then it would have, given the opportunity, assuredly excluded the less reliable, inherently more suspect, third-party identification testimony of a recanted or forgotten identification. In this context, Justice COOLEY's justification for exclusion is equally compelling: "it [the third-party identification testimony] was likely to be exceedingly mischievous, for much depended in the case upon this recognition." *Mead, supra* at 230. Third-party identification testimony is inherently unreliable because the accuracy of the identification cannot be adequately assessed by the trier of fact.

This Court recognized the problems inherent in eyewitness identification. See *People v Anderson, supra,* and accompanying appendix at 192-220. While one infirmity concerns the suggestiveness of the identification procedure employed, this is only one of many infirmities that render eyewitness identification suspect.

> Some are implicit in the original situation, including, for example, the insignificance—at the time and to the observer—of the events, the length of time of observation, and the less than ideal observation conditions which generally apply (distance, poor lighting, fast movement, or crowds). The witness himself is a major source of unreliability, due to the effect of observing under stress (especially applicable in the case of observers who are the victims as well), or often to defects in physical condition such as age, sickness, or fa-

tigue.[7] [Comments, *The use of prior identification evidence in criminal trials under the federal rules of evidence,* 66 J Crim L & Criminology 240, 246 (1975).]

The majority opinion overlooks the infirmities inherent in eyewitness identification. Even in the absence of a suggestive identification procedure, the intrinsic infirmities in eyewitness identification remain. When an identifier denies or forgets an extrajudicial identification, the jury cannot assess whether the identifier was equipped to make an accurate identification. Furthermore, the third party cannot provide information relating to the identifier's initial observation of the defendant and the identifier's ability to accurately transfer these images to the extrajudicial identification.

When the identifier denies or forgets an extrajudicial identification, the jury is not presented with the tools necessary to determine whether the alleged extrajudicial identification was accurate. When the third-party identification testimony is offered merely to bolster, the jury will have had the benefit of hearing how the identifier made the identification. The accuracy of the identification can be tested. It defies logic to suggest that earlier panels of this Court would have embraced third-party identification testimony whose accuracy could not be credibly tested when it excluded third-party identification testimony whose accuracy could be tested.

### B

The policies prompting the universal exclusion

---

[7] I will concede that some witnesses have sufficient opportunity to observe the defendant, coupled with the ability to adequately transfer the observed image to the extrajudicial identification. I would submit, however, that this is the exception to the rule. See *Anderson,* and accompanying appendix.

of hearsay testimony, as well as the justification for established exceptions, shed further light on this Court's intent regarding the proper boundaries of MRE 801(d)(1)(C).

Hearsay is "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). Generally, hearsay evidence is inadmissible unless it qualifies as an exception to the hearsay rule. MRE 802. Hearsay is repugnant to the truth-seeking function of litigation because the statement is made in the absence of testimonial safeguards implemented to foster reliability. At trial a witness must testify under oath or affirmation, exposed to the threat of perjury. The trier of fact can observe a witness' demeanor and physical response to offered testimony.[8] Furthermore, a witness is exposed to contemporaneous cross-examination regarding his offered assertions. Binder, Hearsay Handbook (2d ed), § 3.01, p 59. Cross-examination is "beyond any doubt the greatest legal engine ever invented for the discovery of truth." 5 Wigmore (Chadbourn rev), § 1367, p 32. The safeguards are believed to aid the exposure of possible ambiguity, insincerity, faulty perception, and erroneous memory. The absence of the three testimonial safeguards render hearsay statements untrustworthy.

Similarly, the recognition that certain extrajudicial statements possess sufficient indicia of reliability, coupled with a need for the evidence, has prompted this Court to recognize exceptions to the hearsay rule.

---

[8] The solemnity of the occasion and possibility of public disgrace can scarcely fail to impress the witness, and falsehood no doubt becomes more difficult if the person against whom [it is] directed is present. [2 McCormick, Evidence (4th ed), § 245, p 94.]

Exceptions to the hearsay rule are justified by the belief that the hearsay statements are *both necessary and inherently trustworthy.* [*People v Meeboer (After Remand),* 439 Mich 310, 322; 484 NW2d 621 (1992). Emphasis added.]

On the basis of the policies prompting the hearsay rule and its exceptions, it cannot be denied that the Court generally intends to exclude from trial evidence that is untrustworthy and unreliable. It is from this premise that the different types of identification testimony must be examined in order to determine whether such statements are excluded from the definition of hearsay pursuant to MRE 801(d)(1)(C).

III

This Court extensively examined the reliability of eyewitness identification in *People v Anderson, supra.* On the basis of documentation of instances of erroneous eyewitness identification and scientific principles, the Court concluded "that there are serious problems concerning the accuracy of eyewitness identification and that real prospects for error inhere in the very process of identification completely independent of the subjective accuracy, completeness or good faith of witnesses." *Id.* at 180.

The vagaries of eyewitness identification are well-known; the annals of criminal law are rife with instances of mistaken identification. Mr. Justice Frankfurter once said: "What is the worth of identification testimony even when uncontradicted? The identification of strangers is proverbially untrustworthy. The hazards of such testimony are established by a formidable number of instances in the records of English and American trials. These instances are recent—not due to the

brutalities of ancient criminal procedure." [*United States v Wade,* 388 US 218, 228; 87 S Ct 1926; 18 L Ed 2d 1149 (1967).]

As a result, eyewitness identification testimony is burdened by the same characteristic found offensive in hearsay evidence: it is untrustworthy.[9]

> Considering that no evidence, other than an outright confession, probably carries as much weight, not only with lay jurors but with many law enforcement officials as well, such criticisms are by no means academic. [66 J Crim L & Criminology 245.]

#### 1. IDENTIFICATION TESTIMONY BY THE IDENTIFIER

While the reliability of an eyewitness identification is questionable, it has nevertheless been recognized that an identification made soon after an event is generally more probative than an identification made during trial.

> [T]he earlier identification has greater probative value than an identification made in the courtroom after the suggestions of others and the circumstances of the trial may have intervened to create a fancied recognition in the witness' mind. [4 Weinstein & Berger, Evidence, ¶ 801(d)(1)(C)[01], p 801-217. Citation omitted.]

> We should not blind ourselves to what the law has learned by bitter experience—identification in court is frequently an almost worthless formality. . . . By the time of trial positions have often become so fixed and memory so attenuated and distorted by subsequent events that witnesses sel-

---

[9] For a considered examination of the reliability of eyewitness testimony, see *Anderson* at 172-180, and accompanying appendix at 192-220.

dom make identifications on the basis of their raw recollection of the original event. [*United States v Barbati*, 284 F Supp 409, 413 (ED NY, 1968). Citations omitted.]

The identifier's identification testimony possesses attributes that elevate eyewitness identification from its unreliable status to a position that satisfies this Court's intent of admitting evidence that is necessary and trustworthy.[10] In an attempt to provide the most probative evidence to the trier of fact, this Court has admitted testimony of an extrajudicial identification offered by the identifier for over one hundred years.[11] While the reliability of eyewitness identifications is dubious, the identification is often essential to resolution of the case. Admittedly, an extrajudicial identification cannot be tested by contemporaneous cross-examination. However, when an extrajudicial identification is offered by the identifier, the opposing party can scrutinize the circumstances prompting the identifier's selection. Cross-examination will reveal how the identifier came to make the identification, potentially exposing any weaknesses and uncertainty of the prior identification. This ability to test the identification and the process attendant to the identification provides, in essence, an indicia of reliability, not necessarily that the identification is correct, but in the sense that the factfinder is adequately equipped to judge the accuracy of the often vital identification.[12]

---

[10] Trustworthy evidence includes evidence that, while suspect, can be adequately tested and scrutinized by the trier of fact. This type of evidence furthers the truth-seeking function of trial.

[11] See discussion of *Mead, supra* at 393-394.

[12] Generally, a hearsay statement is deemed to possess an indicia of reliability when made under specific circumstances that make it more probable than not that the substance of the statement is true. This recognition justifies admitting hearsay, an exception to its general exclusion. For example, the dying declaration exceptions recognize

Identification testimony offered by the identifier is the most reliable evidence of identification because it was made before the influences found at trial, before the identifier's position has become fixed. The trustworthiness of the assertion can be tested through cross-examination before the trier of fact, while the identifier is under oath. Furthermore, the identifier has personal knowledge of why the identification was made, providing a basis not only for cross-examination, but for meaningful cross-examination.

This type of evidence is in accord, not only with this Court's pre-MRE position concerning identification testimony, but also with its purpose and policies underlying adherence to the hearsay rule and the recognition of various exceptions. Accordingly, MRE 801(d)(1)(C) excludes from the definition of hearsay the out-of-court statements of identification as communicated at trial by the identifier.

### 2. THIRD-PARTY IDENTIFICATION TESTIMONY

Unlike identification testimony of the identifier, third-party identification testimony possesses none of the attributes that would elevate it from its unreliable status. When a third party testifies about a prior identification by the identifier, the accuracy of the identification (which is generally being used to convict a defendant of a crime),

that most people will not lie when they believe that death is impending. See MRE 804(b)(2). Similarly, MRE 803(2) permits the introduction of excited utterances, which are hearsay by definition. Admission is justified because the spontaneous statement that results from a startling event is considered to be a sincere response.

While not identical, admission of the identifier's testimony of an extrajudicial identification possesses analogous safeguards: the proximity of an earlier identification is more probative than the formalistic in-court identification, *and* its accuracy can be evaluated by the trier of fact.

cannot be tested. As a result, the third-party identification testimony is not only unreliable, but it lacks probative value. It cannot credibly provide the trier of fact information the third party knows to be true. MRE 801(d)(1)(C) does not authorize the admission of third-party identification testimony as substantive evidence irrespective of the identifier's testimony regarding the extrajudicial identification.

### a. IDENTIFIER TESTIFIES OF EXTRAJUDICIAL IDENTIFICATION

Regardless of the identifier's identical testimony, third-party testimony of another's identification is unreliable. The third-party identification testimony cannot vouch for the accuracy of the identification, and its cumulative effect is potentially dangerous.

> Third-party bolstering occurs when, for example, a police officer present at the lineup testifies in court that the witness in his presence said, "This is the man." Obviously the testimony of the police officer is of no value whatsoever. If the witness made a "wrong" identification, the police officer is bolstering that mistake. If the witness made a "right" identification, the police officer is bolstering evidence he knows nothing about, since he himself never saw the perpetrators. Yet juries ask, "How can they *both* be mistaken?" [Sobel, Eyewitness Identification (2d ed), § 4.3(b), p 4-18. Emphasis in original.]

The third-party identification testimony fails to reveal whether the identifier accurately transferred the mental images made during the commission of the crime to the later extrajudicial identification. The third party cannot testify about

the identifier's "ability to remember and articulate the details of the crime, and the appearance of the offender." Mauet, *Prior identifications in criminal cases: Hearsay and confrontation issues,* 24 Ariz L R 29, 49 (1982). The third party cannot testify about the factors scrutinized by the trier of fact when determining the accuracy of the identifier's identification. Such testimony is not only irrelevant, but misleading because it appears to corroborate the identifier's testimony while it is not true corroboration testimony at all.[13] *Id.* While the third party can corroborate the fact that the identifier did identify a person at a certain time and place, the third party has no basis on which to corroborate the accuracy of the statement.

In light of the unreliability of such testimony, coupled with this Court's pre-MRE position regarding third-party identification testimony, third-party identification testimony that bolsters the identifier's identification is inadmissible as substantive evidence. Third-party identification testimony is restricted to " 'what took place' and under 'what circumstances the identification was made' . . . ." *Poe* at 618. The third party *cannot* testify about the identifier's actual identification because this type of statement is hearsay, MRE 801(c), and it is not excluded from the definition of hearsay under MRE 801(d)(1)(C).[14]

---

[13] Mauet characterizes true corroboration testimony as testimony by different sources, based on firsthand knowledge, that reveals the same conclusion. *Id.* at 49.

[14] The third party may testify, however, about the identifier's prior identification if it has been suggested that the identifier's in-court identification is the product of recent fabrication, improper influence or motive.

> *Statements which are not hearsay.* A statement is not hearsay if—
> (1) *Prior statement of witness.* The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . (B) consistent with

### b. IDENTIFIER DENIES OR FORGETS MAKING EXTRAJUDICIAL IDENTIFICATION

Third-party testimony of an identifier's identification that the identifier has either denied making or failed to recall is devoid of any attributes that would make it reliable.[15] The eyewitness identification itself is unreliable. Furthermore, under this situation there is no one available to testify to the accuracy of the identification.[16] While the alleged identifier can be cross-examined,[17] the cross-examination is, in reality, an exercise in futility.

"[S]uppose that at the trial the witness not only fails to identify the defendant, but also denies that he ever identified him on a prior occasion. May the

his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive . . . . [MRE 801(d)(1)(B).]

[15] Third-party testimony of an identification the identifier denies or forgets making offers neither the traditional indicia of reliability: statement made under specific circumstances that make it more probable than not that the substance of the statement is true, nor an analogous safeguard: the availability of information that provides the trier of fact with the ability to access the accuracy of the statement.

[16] Admitting third-party identification testimony creates a potential problem of constitutional dimension. Specifically, whether the introduction of such testimony violates a defendant's constitutional guarantee of confrontation. Admission appears especially suspect in instances in which the identifier denies or forgets making the extrajudicial statement. While the federal courts have examined this issue and found no federal constitutional violation, *United States v Owens,* 484 US 554; 108 S Ct 838; 98 L Ed 2d 951 (1988), this Court has yet to determine the issue under the Michigan Constitution. Const 1963, art 1, § 20. I do not address this issue because this case can be disposed of on nonconstitutional grounds. " 'Constitutional questions will not be passed upon when other decisive questions are raised by the record which dispose of the case.' " *Lisee v Secretary of State,* 388 Mich 32, 40; 199 NW2d 188 (1972) (citations omitted). The majority, however, concludes that MRE 801(d)(1)(C) allows the admission of third-party identification testimony. Yet, the majority fails to examine the confrontational issue that its holding implicates.

[17] The rule conditions admissibility of the statement of identification on the opposing party's opportunity to cross-examine the identifier. MRE 801(d)(1)(C).

prosecutor prove by mere observers that a positive identification actually took place, and obtain a conviction on the basis of that testimony? Clearly the answer would be no. . . . The plain common sense prohibiting such testimony is obvious. True it is that the person alleged to have made the out-of-court statement (*i.e.*, the original identification) is present in court and available for cross-examination . . . . Here, however cross-examination would constitute an exercise in futility. Of what possible value to the defendant is a cross-examination of a witness as to the accuracy of an identification he claims he never made?" [4 Weinstein & Berger, ¶ 801(d)(1)(C)[01], p 801-223, n 27, quoting Wall, Eye-Witness Identification in Criminal Cases, 161-162 (1965).]

The Massachusetts Supreme Court reached a similar conclusion:

Prior identifications are admissible as probative evidence notwithstanding their hearsay attributes because of the superior probative worth of an identification made closer in time to the events in question. Where, however, the extrajudicial identification is established not by the identifying witness but by a person who observed the identification, we believe that probative worth is outweighed by "the hazard of error or falsity in the reporting." Where there is a dispute not only as to the accuracy of a pretrial identification, but also as to whether the identification was in fact made, "the evidential value of the prior identification is almost completely dissipated." Thus, a police officer's attribution to a witness of a positive identification denied by the witness at trial is not admissible to prove the identification. Its effect is limited to impeachment. [*Commonwealth v Daye*, 393 Mass 55, 61; 469 NE2d 483 (1984). Citations omitted.]

While the majority insists that defense counsel

has the ability to attack the extrajudicial identification via cross-examination, it cannot seriously contend that cross-examination can expose the accuracy, trustworthiness or the reliability of the identification.[18] The absence of a scintilla of reliability of this type of testimony, coupled with this Court's pre-MRE position regarding the admissibility of third-party identification testimony, compels the conclusion that MRE 801(d)(1)(C) does not exclude from the definition of hearsay, third-party identification testimony of an identifier's extrajudicial identification when the identifier denies or forgets making the extrajudicial identification.[19] This testimony is repugnant to the truth-seeking function of trial, contrary to the intent and policies surrounding the adoption of MRE 801(d)(1)(C).

### 3. THE FEDERAL INTERPRETATION

While I am aware of the federal interpretation of FRE 801(d)(1)(C), see *United States v Jarrad,* 754 F2d 1451 (CA 9, 1985); *United States v Lewis,* 565 F2d 1248 (CA 2, 1977), I cannot espouse its rationale or result. Admittedly, the federal approach provides persuasive authority; this Court, however, is not bound by the federal application. We have in the past interpreted the MREs more

---

[18] The factors upon which the credibility of testimony depends are the perception, memory, and narration of the witness. Did the witness perceive accurately? Has he retained an accurate impression of what he perceived? Is his language such as to convey that impression correctly? [2 McCormick, *supra,* § 245, p 581.]

[19] The critical issue regards the credibility of the recanting or forgetful identifier. The third-party identification testimony is admissible for impeachment purposes as a prior inconsistent statement. The jury does not need third-party identification testimony as substantive evidence to evaluate the identifier's credibility. Once confronted with the impeaching evidence, the jury can give weight to the witness and his trial testimony.

stringently than their federal counterparts. See *Meeboer (After Remand)* at 340, n 1 (BRICKLEY, J., dissenting). When the federal approach is repugnant to this Court's intent in adopting the MREs, it is this Court's duty to reject the federal application. Furthermore, not all commentators embrace the direction the federal rule has taken. See Seidelson, *Third-party testimony about prior identifications and federal rule of evidence 801(d)(1)(C): A petition for rehearing,* 8 Rev of Litigation 259 (1989). Professor Seidelson suggests that the federal courts have erred in their application of FRE 801(d)(1)(C) because of their erroneous reliance on extraneous statements made during the floor debate. "It is established law . . . that the statements and opinions of legislators uttered in the debates are not competent aids to the court in ascertaining the meaning of statutes." *Id.* at 271, n 38 (citations omitted). Professor Seidelson asserts that the federal courts would have properly applied FRE 801(d)(1)(C) had it effectuated the intent of the conference committee: The codification of existing federal law which allowed "only the substantive admissibility of an identifying witness's testimony as to his prior identification." *Id.* at 267. I would not disregard the precedent and policies of this Court to simply mimic the Federal Rules of Evidence and other jurisdictions.

IV

Third-party identification testimony is limited to the facts and circumstances surrounding the identification, prohibiting testimony of the content of the identification as substantive evidence. Accordingly, the admission of Officer Bivens and attorney Hall's testimony of Carey Jackson's earlier identification as substantive evidence was erroneous. MRE 802.

Furthermore, I cannot agree with the Court of Appeals conclusion that "admission in this case was not prejudicial because two very credible witnesses for the prosecution positively identified the defendant." 193 Mich App 371.

The testimony of Lasenby and Mann is suspect at best. In regard to Lasenby, his trial testimony contradicted the initial statement he gave to the police. Additionally, he acknowledged that he testified only because he feared arrest. Such testimony is neither positive nor particularly credible.

The other "credible witness" was the state witness, Melvin Mann. Mann's testimony can only be characterized as "incredible." Mann failed to inform the police of his presence at the crime scene until he was arrested for the victim's murder. In addition to this active concealment, Mann went out of his way to hide pertinent evidence following the shooting of his friend and business partner. Immediately following the shooting, Mann left the scene of the crime in the Jeep in which Nance was shot under the pretense of getting help.[20] While his friend was dying on the ground, Mann drove to another acquaintance's house, hid the Jeep in a garage, disposed of the bullet-riddled seatcover and hid the keys to the vehicle. Upon his return to the crime scene, he failed to report anything to the police. While he was "persuaded" to give a statement,[21] this statement differed from his ultimate trial testimony.

In addition to the dubious credibility of both identifying witnesses, their versions of the event were inconsistent. Lasenby asserted that the defendant wore blue jeans at the time of the shoot-

---

[20] Recall that Mann was at a public phone at the time of the shooting. A call to 911, for assistance, is free.

[21] Mann failed to give a statement until his arrest for Nance's death.

ing, while Mann stated that the defendant wore beige shorts.

These facts, coupled with the heavy reliance most juror's place on a police officer's testimony,[22] clearly prejudiced the defendant. Accordingly, the defendant is entitled to a new trial.

LEVIN, J., concurred with CAVANAGH, C.J.

[22] Justice RILEY, during her tenure at the Court of Appeals, recognized the potential danger of allowing police officers to repeat an extrajudicial identification. Third-party identification testimony "should be confined to relating the circumstances surrounding the identification," *Prophet,* n 1 *supra* at 624, "[t]his is especially true where, as here, a central issue at trial is identification and where the third party is a police officer, whose testimony may be given undue weight by the jury."