# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

REGINALD LAVEL HOLLAND,

       Defendant-Appellant.

UNPUBLISHED
September 15, 2015

No. 320869
Wayne Circuit Court
LC No. 13-006651-FC

Before: GADOLA, P.J., and JANSEN and BECKERING, JJ.

PER CURIAM.

A jury convicted defendant of kidnapping, MCL 750.349, two counts of first-degree criminal sexual conduct (CSC), MCL 750.520b(1)(c) and (e), two counts of third-degree CSC 750.520d(1)(b), and felonious assault, MCL 750.82. The trial court sentenced defendant as a fourth habitual offender, MCL 769.12, to concurrent terms of life in prison for the kidnapping conviction, life in prison for one count of first-degree CSC and 40 to 60 years for the second count of first-degree CSC, 25 to 40 years for each third-degree CSC conviction, and 10 to 15 years for the felonious assault conviction. Defendant appeals as of right, and we affirm.

## I. FACTS AND PROCEEDINGS

The victim, CY, testified that she went to a gas station at Trumbull and West Warren in Detroit to look for someone to drive her to her daughter's house. A woman who CY knew only as Vicky, but who CY had frequently seen at the gas station, directed her to defendant, who was in a small white car nearby. CY approached defendant to inquire about a ride. According to CY, defendant pulled out a knife and ordered her to get into his car. He thereafter drove to a dark area near a building and parked the car close enough to the building to prevent CY from opening the passenger door. Defendant threatened CY with the knife and ordered her to perform oral sex on him and to submit to sexual intercourse. Afterward, defendant released CY and she walked back to the gas station, where she reported the incident to the police and then was taken to the hospital for a rape kit examination. Forensic testing revealed that DNA material obtained from CY matched defendant's DNA profile, which also matched DNA evidence obtained from two prior sexual assaults involving victims DJ and AP. At trial, the prosecution was allowed to call as witnesses both DJ and AP, each of whom testified that she was sexually assaulted under circumstances similar to CY's case, and who identified defendant as the assailant.

The defense theory at trial was that CY voluntarily got into defendant's car to help him purchase crack cocaine, that they purchased drugs together, and that they thereafter engaged in consensual sex. Defendant also claimed that he formerly engaged in consensual sex with DJ and AP. He theorized that all three women were falsely accusing him of sexual assault because of disagreements over money.

## II. OTHER-ACTS EVIDENCE

Defendant first argues that the trial court abused its discretion in admitting the other acts testimony of DJ and AP pursuant to MRE 404(b)(1). Defendant objected to this evidence in the trial court only on the ground that it was unfairly prejudicial under MRE 403. He did not argue that the prior incidents lacked sufficient similarity to be admissible for a proper purpose under MRE 404(b)(1). An objection on one ground is insufficient to preserve an appellate attack on a different ground. *People v Kimble*, 470 Mich 305, 309; 684 NW2d 669 (2004). Accordingly, this issue is preserved only to the extent that defendant argues that the evidence was unfairly prejudicial.

This Court reviews a preserved claim of evidentiary error for an abuse of discretion. *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Unger*, 278 Mich App 210, 216; 749 NW2d 272 (2008). Preliminary questions of law involving the admissibility of evidence are reviewed de novo. *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999). Unpreserved claims of evidentiary error are reviewed for plain error affecting the defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

MRE 404(b)(1) prohibits "evidence of other crimes, wrongs, or acts" to prove a defendant's character or propensity to commit the charged crime, but permits such evidence for other purposes, "such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material." Evidence of other crimes or bad acts is admissible when (1) it is offered to show something other than character or propensity, MRE 404(b)(1); (2) it is relevant under MRE 401; and (3) its probative value is not substantially outweighed by the danger of unfair prejudice, MRE 403. *People v VanderVliet*, 444 Mich 52, 74–75; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994). The prosecution must explain how the evidence is relevant to a proper purpose. *People v Dobek*, 274 Mich App 58, 86; 732 NW2d 546 (2007).

Preliminarily, defendant complains that the testimony offered at trial differed in some respects from the prosecutor's offer of proof before trial, upon which the trial court relied to admit the evidence. Although defendant notes that the prosecutor's pretrial notice identified a third proposed witness, that witness did not testify at trial, and the absence of her testimony does not affect the admissibility of DJ's and AP's testimony. And although the trial testimony of DJ and AP differed in some respects from the proposed testimony summarized in the prosecutor's pretrial notice, the differences were minor and do not establish any significant disparity between the prosecutor's offer of proof and the testimony presented at trial, or negate the many common features between the uncharged offenses and the charged assault that served as the foundation for the trial court's decision to admit the evidence under MRE 404(b)(1), for the purpose of showing

that defendant's commission of the charged offense was part of a common plan, scheme, or system in committing sexual assaults against isolated women.

We disagree with defendant's argument that the prior incidents involving DJ and AP were not sufficiently similar to the charged offense to be admissible for a non-propensity purpose. In *People v Pesquera*, 244 Mich App 305; 625 NW2d 407 (2001), the defendant was charged with sexually assaulting five children, ranging in age from four to six years, who all lived in the same mobile home park where the defendant resided. *Id.* at 308. The prosecutor called two witnesses, one male and one female, to testify about other alleged sexual assaults the defendant committed against children. Both witnesses testified that they were friends of the defendant. The female testified that when she was five years old, she, her brother, and the defendant were alone in the children's home. The defendant was playing video games with her brother. The defendant came into her bedroom and touched her genital area and her chest through her clothes. *Id.* at 316-317. The male victim testified that the defendant invited him to the defendant's home to play video games. The defendant brought him into a bedroom, sat the boy on his lap, and told him that he had "a boner." The defendant attempted to touch the boy's penis. *Id.* at 317. This Court held that these prior acts were relevant to proving a "scheme, plan, or system." *Id.* at 318. The common features were that the defendant and the alleged victims knew each other, the defendant formed friendships with the children, the children were very young at the time the abuse occurred, the abuse occurred after the defendant invited the children to play with him, and the abuse consisted of touching the children's sexual organs. *Id.* at 319.

In the instant case, there were sufficient common features between the prior uncharged incidents involving DJ and AP, and the charged offense involving CY, to infer that they are manifestations of a common plan, scheme, or system of perpetrating sexual assaults. All of the incidents involved defendant selecting a solitary woman on the street, threatening her with a weapon, inducing her to enter his car, and driving to a secluded area. All of the sexual assaults were carried out in defendant's car, and each incident involved defendant's use of a threat of violence with a weapon to force the victim to perform sexual acts. All of the offenses occurred in the same general geographic area of Detroit. Evidence that defendant used the same system described by CY to sexually assault the victims of the prior offenses was relevant to show that defendant sexually assaulted CY, and to refute defendant's claim that they engaged in consensual sex.

Defendant argues that the charged offense was not sufficiently similar to the prior offenses because CY admitted that she voluntarily approached defendant's vehicle, that she was not waiting for a bus or walking on the street, and someone she knew was present. These distinctions do not materially detract from the many common features associated with the incidents. Moreover, although CY admitted that she initially voluntarily approached defendant's car to inquire about a ride, she claimed that, similar to the prior incidents, defendant thereafter produced a weapon and forced her inside his car. The fact that CY unwittingly created the opportunity for defendant to execute his common plan, scheme, or system of committing sexual assaults does not render the instant offense materially distinct from the prior offenses. Defendant also argues that CY's trial testimony that defendant forced her into her vehicle was contradicted by other testimony at trial. CY's testimony, if believed, established a similarity between this offense and the uncharged offenses. The credibility of that testimony was a matter for the jury to resolve; it does not render the prior acts evidence inadmissible under MRE 404(b)(1).

Plaintiff also argues that the prior acts evidence was relevant under the "doctrine of numbers," which requires a lower threshold of similarity for admission under MRE 404(b)(1). In *People v Mardlin*, 487 Mich 609; 790 NW2d 607 (2010), the defendant was charged with arson, MCL 750.72, and burning insured property, MCL 750.75, in relation to a fire in his home. The prosecutor's theory was that he was behind on his mortgage payments and utility bills, and that he started the fire to obtain insurance proceeds. His defense theory was that the fire was caused by accident. The prosecutor introduced evidence that the defendant was associated with four previous home or vehicle fires, each involving circumstances in which the defendant benefitted from insurance proceeds or in some other way. *Id.* at 612-613. Our Supreme Court held that the "doctrine of chances," or the "doctrine of objective improbability," was a "theory of logical relevance [that] does not depend on a character inference.'" *Id.* at 616, quoting *People v Crawford*, 458 Mich 376, 393; 582 NW2d 785 (1998). The theory is based on the premise that "as the number of incidents of an out-of-the-ordinary event increases in relation to a particular defendant, the objective probability increases that the charged act *and/or* the prior occurrences were not the result of natural causes." *Mardlin* 487 Mich at 616 (emphasis in original). The doctrine is often associated with MRE 404(b) analyses, "because the doctrine describes a logical link, based on objective probabilities, between evidence of past acts or incidents that may be connected with a defendant and proper, noncharacter inferences that may be drawn from these events on the basis of their frequency." *Id.* at 617. In *Mardlin*, 487 Mich at 617, the Court quoted *United States v York*, 933 F2d 1343 (CA 7, 1991), as follows:

> The man who wins the lottery once is envied; the one who wins it twice is investigated. It is not every day that one's wife is murdered; it is more uncommon still that the murder occurs after the wife says she wants a divorce; and more unusual still that the jilted husband collects on a life insurance policy with a double-indemnity provision. That the same individual should later collect on exactly the same sort of policy after the grisly death of a business partner who owed him money raises eyebrows; the odds of the same individual reaping the benefits, within the space of three years, of two grisly murders of people he had reason to be hostile toward seem incredibly low, certainly low enough to support an inference that the windfalls were the product of design rather than the vagaries of chance. . . . . This inference is purely objective, and has nothing to do with a subjective assessment of [the defendant's] character.

The Court addressed the degree of similarity required under MRE 404(b) for the various purposes of other-acts evidence:

> As we emphasized in *VanderVliet* while advancing a more flexible test than the one described in [*People v*] *Golochowicz* [413 Mich 298; 319 NW2d 518 (1982)]: "the *Golochowicz* approach to modus operandi cases to show identity is not a 'conceptual template' to 'mechanically test' all misconduct evidence barring use of other permissible theories of logical relevance." Rather, "[w]here the proponents' theory is not that the acts are so similar that they circumstantially indicate that they are the work of the accused, *similarity between charged and uncharged conduct is not required.*" Different theories of relevance require different degrees of similarity between past acts and the charged offense to warrant admission. Thus, the "level of similarity required when disproving

innocent intent is less than when proving modus operandi." "When other acts are offered to show innocent intent, logical relevance dictates only that the charged crime and the proffered other acts 'are of the same general category.' " Past events—such as fires in relation to an arson case—that suggest the absence of accident are offered on the basis of a theory of logical relevance that is a subset of innocent intent theories. As such, the past events need *only* be of the same general category as the charged offense. [*Mardlin*, 487 Mich at 622-623.]

The Supreme Court concluded that the lack of evidence that the defendant intentionally set the previous fires was of less importance than the fact that the defendant owned or controlled all of the burned property. *Id.* at 623. The Court concluded that the "unusual number" of past fires involving defendant's property "logically suggested a lack of coincidence." *Id.* at 624. The Court held that the past fires were admissible "to negate defendant's claim that the fire was a mere accident." *Id.* at 624.

The instant case clearly comes within the doctrine of objective improbability. Defendant's theory at trial was that CY and the two prior women all fabricated the sexual assault accusations after engaging in consensual sex with him. Evidence that the two other women reported that defendant sexually assaulted them in a manner similar to CY's experience minimized the likelihood that defendant would be so unfortunate as to be the target of three such false reports. None of the three women knew each other. Defendant testified that he knew DJ and AP before the incidents they reported as sexual assaults, and he believed that they falsely accused him because he did not give them money they demanded. However, the victims' failure to give the police defendant's name or any specific information to identify him is incongruent with defendant's allegation that they fabricated accusations against him out of malice or vindictiveness. The prior incidents were not linked until 2012. These circumstances strongly militate against any inference that the victims had any common motive to falsely report a sexual assault or falsely implicate defendant. The coincidence of three unrelated women, over the course of seven years, falsely reporting sexual assault after having consensual sex with defendant, would be extraordinary. Accordingly, the evidence was also admissible under MRE 404(b)(1) for its relevance in negating, through the doctrine of objective probability, any suggestion that defendant's sexual activity with CY was consensual.

We also reject defendant's argument that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. MRE 403. Although the evidence was damaging, it was not unfairly prejudicial in relation to its probative value. The defense theory was that the sexual acts were consensual. In support of this theory, defendant was allowed to vigorously cross-examine CY with respect to alleged inconsistencies regarding her entry into defendant's vehicle, her intended destination, Vicky's role in the events, the police officers who did not take CY's complaint seriously, and CY's attempt to take defendant's knife. Defense counsel's cross-examination included attacks on CY's character. Counsel insinuated that CY was intoxicated, that she habitually used alcohol and other intoxicants, that she traded sexual favors for drugs, and that she was familiar with prostitution activity. The testimony of two unrelated victims, who claimed they were also sexually assaulted by defendant under similar circumstances, was highly probative of CY's claims, particularly in light of the defense attacks on her testimony. The probative value of the testimony was not substantially outweighed by the danger of unfair prejudice.

## III. PRIOR CONSISTENT STATEMENTS

Defendant next argues that the prosecutor committed misconduct by improperly using CY's preliminary examination testimony to bolster CY's credibility at trial. During defense counsel's cross-examination of CY, he attacked the credibility of her trial testimony that defendant threatened her with a knife to force her inside his vehicle. Counsel suggested that CY fabricated this testimony only after becoming aware that there was no video evidence from the gas station surveillance cameras that could refute her trial testimony regarding her encounter with defendant at the gas station. On redirect examination, the prosecutor introduced portions of CY's preliminary examination testimony, in which she testified consistently with her trial testimony that defendant threatened her with a knife to force her inside his vehicle.

A defendant must "contemporaneously object and request a curative instruction" to preserve an issue of prosecutorial misconduct for appellate review. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Although defendant objected to the prosecutor's introduction of CY's preliminary examination testimony at trial, he did so only on the ground that the prosecutor's redirect examination exceeded the scope of counsel's cross-examination. He did not argue, as he does on appeal, that the prosecutor's use of the preliminary examination testimony constituted improper bolstering. An objection on one ground is insufficient to preserve an appellate attack on a different ground. *Kimble*, 470 Mich at 309. Accordingly, this issue is unpreserved and our review is limited to plain error affecting defendant's substantial rights. *People v Gibbs*, 299 Mich App 473, 482; 830 NW2d 821 (2013).

Defendant frames this issue as involving improper bolstering of CY's credibility. "A prosecutor may not vouch for the credibility of his or her witness 'to the effect that [the prosecutor] has some special knowledge concerning a witness'[s] truthfulness." *People v Wood*, 307 Mich App 485, 505; 862 NW2d 7 (2014), quoting *People v Bahoda*, 448 Mich 261, 276; 531 NW2d 659 (1995). Defendant does not contend that the prosecutor implied that she had some special knowledge regarding CY's credibility. The premise of defendant's argument is that it was improper to use CY's preliminary examination testimony to show that she testified at the preliminary examination consistent with her trial testimony. The issue is better addressed as a claim of evidentiary error.

Generally, a witness's prior statement that is consistent with the witness's trial testimony is inadmissible hearsay where the prior statement is offered to prove the truth of the matter asserted. *People v Malone*, 445 Mich 369, 387-388; 518 NW2d 418 (1994). But MRE 801(d)(1)(B) provides that a witness's prior statement is not hearsay if the statement is "consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive . . . ."

In *People v Jones*, 240 Mich App 704, 707; 613 NW2d 411 (2000), this Court identified the following elements necessary to introduce a witness's prior consistent statement:

> (1) the declarant must testify at trial and be subject to cross-examination; (2) there must be an express or implied charge of recent fabrication or improper influence or motive of the declarant's testimony; (3) the proponent must offer a prior consistent statement that is consistent with the declarant's challenged in-court

testimony; and, (4) the prior consistent statement must be made prior to the time that the supposed motive to falsify arose. [Citations omitted.]

This Court held "that the motive in the second element must be the same motive in the fourth element of the four-pronged test to admit a prior consistent statement under MRE 801(d)(1)(B)." *Id.* at 711. Conversely, a prior consistent statement, made after or during a period when the declarant had a supposed motive to falsify, is not admissible under MRE 801(d)(1)(B). See *People v Mahone*, 294 Mich App 208, 214-217; 816 NW2d 436 (2011), *People v Rodriquez*, 216 Mich App 329, 332; 549 NW2d 359 (1996), *People v Rosales*, 160 Mich App 304, 308-309; 408 NW2d 140 (1987), and *People v Lewis*, 160 Mich App 20, 29; 408 NW2d 94 (1987).

Defense counsel asserted in his opening statement that CY began to falsely allege that defendant forced her into his vehicle at knifepoint only after she learned that there was no surveillance video that would depict her voluntarily getting into defendant's car. Defense counsel's questions to CY on cross-examination were clearly aimed at suggesting that she was fabricating that defendant had threatened her at knifepoint to induce her to enter his vehicle, given that such a claim was inconsistent with what CY allegedly told a police officer and told the examining nurse at the hospital shortly after the incident. Counsel's opening statement and questions to CY about cameras at the gas station suggested that her supposed motive to fabricate did not arise until after it was established that there was no available video evidence that could refute her claim. These circumstances satisfy the first two requirements of the test set forth in *Jones*, 240 Mich App at 707, namely that the declarant is subject to cross-examination, and that there was a charge of recent fabrication. The third requirement, that the proponent offer a prior consistent statement consistent with the challenged testimony, was satisfied by CY's preliminary examination testimony that defendant pulled a knife and told her to get into the car, which was consistent with her trial testimony. The fourth requirement, that the prior statement must have been made before emergence of the supposed motive to fabricate, is a closer question. According to defendant, the video evidence was erased approximately one year after the charged assault, which occurred in July 2012. The preliminary examination was held on July 25, 2013. The record does not indicate whether or when CY knew that there was no video recording of the incident. Indeed, there is no evidence that CY's entry into defendant's car was in fact captured on video. CY's only testimony on this issue was that she did not know if there were exterior cameras at the gas station, because she never paid attention. But defendant's failure to raise an appropriate objection on this basis at trial prevented the opportunity to delve into questioning to determine what, if anything, CY knew about the alleged video and when. In the absence of any clear basis in the record for concluding that CY was aware at the time of the preliminary examination that there was no available video recording of her encounter with defendant, which defense counsel suggested was the event that motivated her to fabricate her testimony that defendant threatened her with a knife, we cannot conclude that the limited use of the preliminary examination testimony to rehabilitate CY's credibility was plain error.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next argues that trial counsel was ineffective in failing to timely and appropriately object to the prosecutor's use of CY's preliminary examination testimony. Because defendant did not raise an ineffective assistance of counsel claim in a motion for a new trial or request for a *Ginther*[1] hearing, our review of this issue is limited to errors apparent from the record. To establish ineffective assistance of counsel, defendant must demonstrate that counsel's performance "fell below an objective standard of reasonableness under prevailing norms," and that defendant was prejudiced by counsel's deficient conduct. "To demonstrate prejudice, a defendant must show the probability that, but for counsel's errors, the result of the proceedings would have been different." *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013). As explained previously, there is no clear basis in the record for concluding that the prosecutor's use of CY's preliminary examination testimony to rehabilitate CY's credibility was plain error. Accordingly, it is not apparent from the record that defense counsel's failure to object on this basis was objectively unreasonable. Therefore, this claim cannot succeed.

## V. DOUBLE JEOPARDY

Defendant lastly argues that his dual convictions of first-degree CSC and third-degree CSC arising from the same act of penetration violate the constitutional guarantee against double jeopardy. US Const, Am V; Const 1963, art 1, § 15. Defendant did not raise this double jeopardy issue in the trial court, leaving this issue unpreserved. *People v Meshell*, 265 Mich App 616, 628; 696 NW2d 754 (2005). Unpreserved claims of constitutional error are reviewed for plain error affecting substantial rights. *People v Vandenberg*, 307 Mich App 57, 61; 859 NW2d 229 (2014).

"The double jeopardy clauses of the United States and Michigan constitutions protect against governmental abuses for both (1) multiple prosecutions for the same offense after a conviction or acquittal and (2) multiple punishments for the same offense." *People v Calloway*, 469 Mich 448, 450; 671 NW2d 733 (2003). "A dual prosecution and conviction of a higher offense and a lesser cognate offense are permissible where the Legislature intended to impose cumulative punishment for similar crimes, even if both charges are based on the same conduct." *People v Werner*, 254 Mich App 528, 535; 659 NW2d 688 (2002). "Where the Legislature has not clearly expressed an intention to impose multiple punishments, the elements of the offenses must be compared using the *Blockburger* [*v United States*, 284 US 299; 52 S Ct 180; 76 L Ed 306 (1932),] test." *People v Garland*, 286 Mich App 1, 5; 777 NW2d 732 (2009). In *Garland*, this Court addressed the double jeopardy issue presented in this appeal, involving dual convictions of first-degree and third-degree CSC for the same act of penetration. This Court held:

---

[1] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

First, the crimes of CSC I and CSC III are codified in the CSC chapter of the Michigan Compiled Laws as separate statutes. Second, although CSC I and CSC III both require a sexual penetration, the commission of CSC I does not necessarily require commission of CSC III and vice versa. We now compare the abstract, statutory elements of the two CSC crimes of which defendant was convicted, MCL 750.520b(1)(c) and MCL 750.520d(1)(c). MCL 750.520b(1)(c) requires proof that the sexual penetration occurred "under circumstances involving the commission of any other felony." This is not an element of MCL 750.520d(1)(c). MCL 750.520d(1)(c) requires proof that the sexual penetration occurred and was accompanied by the actor knowing or having "reason to know that the victim [was] . . . physically helpless." This is not an element of MCL 750.520b(1)(c). Thus, under the *Blockburger* test, because each offense contains an element that the other does not, CSC I and CSC III are separate offenses for which defendant was properly convicted and sentenced, without violating defendant's double jeopardy protection against multiple punishments. [*Garland*, 286 Mich App at 5-6.]

Here, defendant was convicted of two counts of first-degree CSC. One count was premised on MCL 750.520b(1)(c), sexual penetration occurring "under circumstances involving the commission of any other felony," and the other count was premised on MCL 750.520b(1)(e), sexual penetration while the actor is armed with a weapon. Neither of these circumstances is an element of the third-degree CSC offenses of which defendant was convicted, both of which were based on MCL 750.520d(1)(b), sexual penetration accomplished by force or coercion. Defendant does not contend that force or coercion is an element of MCL 750.520b(1)(e). In addition, we are not persuaded by defendant's argument that force or coercion is an element of MCL 750.520b(1)(c), inasmuch as he was convicted of the other felony of felonious assault, and felonious assault encompasses the circumstances that establish force or coercion. As applicable to this case, force or coercion is established where the actor "overcomes the victim through the actual application of physical force," or the actor "coerces the victim to submit by threatening to use force." MCL 520b(1)(f)(*i*) and (*ii*). The felonious assault statute, MCL 750.82, does not require an application of force or coercion to commit a felonious assault. Thus, defendant's convictions for first-degree CSC under MCL 750.520b(1)(c) and third-degree CSC under MCL 750.520d(1)(b) involve separate offenses, for which defendant can properly be convicted and sentenced without violating his double jeopardy protection against multiple punishments.

Furthermore, as defendant concedes, the prosecutor offered two predicate felonies in support of the charge under MCL 750.520b(1)(c), kidnapping and felonious assault. Defendant does not argue that a double jeopardy violation would exist if kidnapping served as the predicate felony for the conviction under MCL 750.520b(1)(c). The jury did not specify which felony served as the basis for its guilty verdict under MCL 750.520b(1)(c), but it did find beyond a reasonable doubt that defendant was guilty of both felonious assault and kidnapping. Under these circumstances, even if we were to credit defendant's substantive argument, defendant cannot establish a plain error because the jury's kidnapping verdict independently supports defendant's conviction under MCL 750.520b(1)(c), and defendant does not argue that he cannot be separately punished for third-degree CSC when kidnapping is the predicate felony for a conviction under MCL 750.520b(1)(c).

Affirmed.

/s/ Michael F. Gadola
/s/ Kathleen Jansen
/s/ Jane M. Beckering