*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
March 17, 2020

Plaintiff-Appellee,

v

No. 346380
Wayne Circuit Court
LC No. 18-000722-01-FC

AMARIA PALMORE,

Defendant-Appellant.

Before: STEPHENS, P.J., and CAVANAGH and SERVITTO, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of discharging a firearm in a building causing physical injury, MCL 750.234b(3); assault with intent to great bodily harm less than murder (AWIGBH), MCL 750.84; assault with a dangerous weapon (felonious assault), MCL 750.82; possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b; and domestic violence, MCL 750.81(2). The trial court sentenced defendant to 62 months to 15 years' imprisonment for discharging a firearm in a building causing physical injury, 57 months to 10 years imprisonment for AWIGBH, 2 to 4 years' imprisonment for felonious assault, 2 years' imprisonment for felony-firearm, and 93 days in jail for domestic violence. The trial court also ordered defendant to pay $1300.00 in court costs. We affirm.

## I. FACTUAL BACKGROUND

Defendant and Cortez Milliner were in a long-term romantic relationship and lived together. On December 3, 2017, defendant shot Milliner in his "groin area." After Milliner was shot, defendant carried Milliner to his vehicle and drove Milliner to the hospital. When they arrived at the hospital, Milliner could not breathe and needed to be intubated. Officers responded to Milliner and defendant's home and located a gun holster on a bed and an unloaded semiautomatic pistol and a magazine containing live ammunition on the kitchen counter. The next day, Officer Damario Elliot-Glenn, a Detroit police officer, went to the hospital to obtain a statement from Milliner. Officer Elliot-Glenn testified that while he was at the hospital, the attending nurse presented him with a piece of paper on which Milliner had written that defendant

-1-

had shot him. Officer Elliot-Glenn took custody of defendant, who had come to the hospital to try and visit Milliner, and transported him to the Detroit Detention Center.

## II. HEARSAY

On appeal, defendant first argues the trial court improperly admitted hearsay statements made to police officers by Milliner identifying defendant as the shooter. Because the issue presented has not been preserved for review, this Court must review the claim "for plain error affecting defendant's substantial rights." *People v Roscoe*, 303 Mich App 633, 648; 846 NW2d 402 (2014). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). To show that a defendant's substantial rights were affected, there must be "a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. As such, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. (quotation marks and citations omitted).

Defendant argues that police officers' statements that Milliner identified defendant as the shooter were inadmissible hearsay. " 'Hearsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *People v Johnson*, 315 Mich App 163, 193; 889 NW2d 513 (2016), quoting MRE 801(c). "Hearsay is generally not admissible unless an exception to the rule applies." *Id*. Certain statements made outside of trial, however, are by definition not hearsay under MRE 801(d). For example, under MRE 801(d)(1), a witnesses' prior statement is not hearsay, if:

> [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition, or (B) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive, or (C) one of identification of a person made after perceiving the person.

While we agree with defendant that the statements at issue do not fall under MRE 801(d)(1)(B), defendant fails to address MRE 801(d)(1)(C). MRE 801(d)(1)(C) provides that a prior statement is not defined as hearsay where the earlier statement is one of identification, and the witness is available for cross-examination. *People v Malone*, 445 Mich 369, 376-377; 518 NW2d 418 (1994). Therefore, it is substantively admissible as nonhearsay. *Id*. at 378. The rule "does not require laying a foundation other than that the witness is present and found to be available for cross-examination." *Id*. at 377.

At trial, Milliner testified that on December 3, 2017, he went to retrieve his jacket from the closet, turned around and saw defendant pointing a gun at him, and defendant shot him. Milliner stated that because he was intubated and unable to speak at the hospital, he wrote down "[Defendant] shot me." Milliner identified the piece of paper at trial and it was admitted into

evidence. Defense counsel cross-examined Milliner regarding the shooting, but did not inquire about Milliner's identification of defendant. Because Milliner's statement was clearly one of identification after perceiving defendant, and because he was available for cross-examination, the statement was not hearsay. MRE 801(d)(1)(C).

Defendant also argues that the trial court erred by admitting police officers' testimony that Milliner identified defendant as the man who shot him. This argument is without merit.

At trial, Detective Jeffrey Williams testified that on December 4, 2017, he went to Detroit Receiving Hospital to investigate the shooting. Williams testified that he asked Milliner if defendant had shot him and Milliner nodded yes. On the second day of trial, the prosecution, without objection by defendant, admitted a stipulation regarding the testimony of Sergeant Herbert Forton, a Detroit Receiving Hospital police officer. According to the stipulated testimony, on December 4, 2017, Milliner's nurse showed Sergeant Forton the piece of paper on which Milliner wrote "[Defendant] shot me." Officer Damario Elliot-Glenn testified at trial that while he was at the hospital, Milliner's nurse also presented him with the piece of paper on which Milliner wrote that defendant had shot him. The police officers were subject to cross-examination, and their statements at trial were consistent with Milliner's testimony at trial.

Pursuant to MRE 801(d)(1)(C), "third-party testimony of an out-of-court statement of identification by an identifier/declarant is substantive nonhearsay evidence and is admissible even if it goes beyond the simple facts and circumstances of the prior out-of-court statement of identification—if the identifier/declarant testifies and is subject to cross-examination." *People v Sykes*, 229 Mich App 254, 266-267; 582 NW2d 197 (1998). Because the police officers' testimony about Milliner's out-of-court statements of identification were admissible as nonhearsay, the trial court did not err in admitting this evidence. Further, "[t]hird-party identification testimony by a police officer, including *repetition* of the statements of identification, is not hearsay, and the admission of such testimony is within the discretion of the trial court." *People v Legrone*, 205 Mich App 77, 83; 517 NW2d 270 (1994) (emphasis added).

While defendant additionally claims that the admission of Milliner's previous identification of defendant improperly bolstered Milliner's credibility, defendant did not dispute at trial that he was the one who shot Milliner. Defendant claimed the shooting was accidental. The officers did not testify about the substance of Milliner's allegations regarding how the shooting occurred, only the fact that Milliner identified defendant as the shooter, which was not in dispute. Therefore, defendant is not entitled to a new trial.

Defendant also argues defense counsel was ineffective for failing to object to the admission of the alleged hearsay statements made to police officers by Milliner identifying defendant as the shooter. However, it is well established that this Court will not find trial counsel to be ineffective where, even if counsel had made an objection, that objection would have been futile. *People v Thomas*, 260 Mich App 450, 457; 678 NW2d 631 (2004). As previously discussed, the third-party identification testimony by the police officers qualifies as nonhearsay under MRE 801(d)(1)(C). Because the testimony by the police officers regarding Milliner's previous statements of identification does not constitute hearsay, defense counsel was not ineffective for failing to make a groundless objection to the identification testimony.

## III. DOUBLE JEOPARDY

Defendant next argues that his convictions for AWIGBH, felonious assault, discharging a firearm in a building causing injury, and domestic violence, arising from a single gunshot, violate the double jeopardy prohibition against multiple punishments for the same offense. To preserve a

double jeopardy claim, the defendant must raise the issue at the trial court level. *People v McGee*, 280 Mich App 680, 682; 761 NW2d 743 (2008). Because defendant failed to raise this issue before the trial court, it is unpreserved. "However, a double jeopardy issue presents a significant constitutional question that will be considered on appeal regardless of whether the defendant raised it before the trial court." *Id.*

"A double jeopardy challenge presents a question of constitutional law reviewed de novo on appeal." *People v Ackah-Essien*, 311 Mich App 13, 30; 874 NW2d 172 (2015). "We review an unpreserved claim that a defendant's double jeopardy rights have been violated for plain error that affected the defendant's substantial rights, that is, the error affected the outcome of the lower court proceedings." *McGee*, 280 Mich App at 682. To avoid forfeiture under the plain error rule, it must be shown that error occurred, the error was plain, and the plain error affected substantial rights." *Carines*, 460 Mich at 763.

The United States and the Michigan Constitutions protect a defendant from being placed twice in jeopardy for the same offense. US Const, Am V; Const 1963, art 1, § 15. "The prohibition against double jeopardy protects individuals in three ways: (1) it protects against a second prosecution for the same offense after acquittal; (2) it protects against a second prosecution for the same offense after conviction; and (3) it protects against multiple punishments for the same offense." *People v Miller*, 498 Mich 13, 17; 869 NW2d 204 (2015) (quotation marks and citation omitted). Because defendant's convictions and sentences were on the basis of the same conduct, this case involves the multiple punishments strand of double jeopardy. *Id.*

> The multiple punishments strand of double jeopardy is designed to ensure that courts confine their sentences to the limits established by the Legislature and therefore acts as a restraint on the prosecutor and the Courts. The multiple punishments strand is not violated [w]here a legislature specifically authorizes cumulative punishment under two statutes . . . . Conversely, where the Legislature expresses a clear intention in the plain language of a statute to prohibit multiple punishments, it will be a violation of the multiple punishments strand for a trial court to cumulatively punish a defendant for both offenses in a single trial. Thus, the question of what punishments are constitutionally permissible is not different from the question of what punishments the Legislative Branch intended to be imposed. [*Id.* at 17-18 (quotation marks and citations omitted).]

"The purpose of the double jeopardy protection against multiple punishments for the same offense is to protect the defendant from having more punishment imposed than the Legislature intended." *People v Dickinson*, 321 Mich App 1, 10; 909 NW2d 24 (2017), (quotation marks and citation omitted). Absent such clear legislative intent to impose multiple punishments, this Court must determine whether the sentences were imposed for the "same offense" as defined by the test in *Blockburger v United States*, 284 US 299, 304; 52 S Ct 180; 76 L Ed 306 (1932). *People v Smith*, 478 Mich 292, 315-316; 733 NW2d 351 (2007), aff'd in part, rev'd in part on other grounds 478 Mich 292 (2007). Two offenses can, after all, have common elements and still be separate for double jeopardy purposes if the legislative intent that separate offenses be created is clear from the face of the statutes or the legislative history. *People v Ford*, 262 Mich App 443, 449; 687 NW2d 119 (2004). "[T]he *Blockburger* test is a tool to be used to ascertain legislative intent," and in applying this test, "a court must inquire whether each offense contains an element not contained

in the other offense." *Dickinson*, 321 Mich App at 11. "If the two offenses do not each contain at least one element that the other does not, double jeopardy bars additional punishment." *Id*. If, however, "two distinct statutes cover the same conduct but each requires proof of an element the other does not, a presumption exists that the Legislature intended multiple punishments unless the Legislature expressed a contrary intent." *Id*. (quotation marks and citation omitted). Thus, if the Legislature has clearly intended to impose multiple punishments, the imposition of multiple sentences is permissible regardless whether the offenses have the same elements, but if the Legislature has not clearly expressed its intent, multiple offenses may be punished if each offense has an element that the other does not. *Smith*, 478 Mich at 316.

The AWIGBH statute, MCL 750.84(1)(a), makes it is a 10-year felony to "[a]ssault[ ] another person with intent to do great bodily harm, less than the crime of murder." MCL 750.84(3) provides that "[t]his section does not prohibit a person from being charged with, convicted of, or punished for any other violation of law arising out of the same conduct as the violation of this section." Likewise, the statute prohibiting the discharge of a firearm in a dwelling or occupied structure provides, "[t]his section does not prohibit an individual from being charged with, convicted of, or punished for any other violation of law that is committed by that individual while violating this section." MCL 750.234b(8). The plain language of MCL 750.84(3) and MCL 750.234b(8) make it clear that the legislature intended that defendant's convictions of AWIGBH and discharge of a firearm at a dwelling or unoccupied structure does not preclude a conviction of felonious assault or domestic violence. The most reliable evidence of our Legislature's intent is the plain language of the statute. *People v Rea*, 500 Mich 422, 427, 902 NW2d 362 (2017). And, there is no double jeopardy violation when a defendant is convicted and sentenced under multiple statutes that authorize cumulative punishment for the same conduct. *Miller*, 498 Mich at 17-18. Therefore, there is no double jeopardy violation with respect to these two offenses.

More importantly, each of the convictions defendant is challenging involve different elements. The elements of AWIGBH are: "(1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder." *People v Brown*, 267 Mich App 141, 147; 703 NW2d 230 (2005) (quotation marks and citation omitted.) "The elements of felonious assault are (1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery." *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999). The elements of discharge of a weapon in a building are: (1) the defendant intentionally discharges a firearm, (2) in a facility, (3) the defendant knows or has reason to believe is an occupied structure, and (4) in reckless disregard for the safety of any individual. *People v Henry*, 239 Mich App 140, 143; 607 NW2d 767 (1999). The domestic violence statute provides that "an individual who assaults or assaults and batters . . . an individual with whom he or she has or has had a dating relationship . . . is guilty of a misdemeanor. . . ." *People v Stricklin*, 322 Mich App 533, 537; 912 NW2d 601 (2018), quoting MCL 750.81.

In *People v Strawther*, 480 Mich 900; 739 NW2d 82 (2007), our Supreme Court determined that convictions of both AWIGBH and felonious assault do not violate the double jeopardy because the two crimes have different elements. A Supreme Court order is binding if it is "a final Supreme Court disposition of an application, and the order contains a concise statement of the applicable facts and the reason for the decision." *People v Crall*, 444 Mich 463, 464 n 8; 510 NW2d 182 (1993). In addition, by definition, the crimes of felonious assault and discharge of a weapon in a building require the offender to be in possession of a dangerous weapon, while the

crime of AWIGBH does not. Further, to be convicted of discharge of a weapon in a building, defendant must intentionally discharge a firearm in a facility in reckless disregard for the safety of any individual. These elements are not required to be convicted of AWIGBH nor felonious assault. Lastly, a conviction of domestic violence requires a dating relationship, which is not an element in any of defendant's other convictions. Because the offenses at issue involve different elements, there was no double jeopardy violation.

Defendant nevertheless argues that the legislative intent to prohibit multiple punishments is expressed in the inconsistent *mens rea* requirements to prove AWIGBH and felonious assault.[1] Defendant, however, cites no authority for this proposition. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). Further, when an offense requires criminal intent, the necessary *mens rea* is an element of the offense. If offenses contain differing elements, conviction under both does not constitute a double jeopardy violation. *Smith*, 478 Mich at 319. These two offenses contain differing elements.

## IV. IMPROPER SENTENCING CONSIDERATIONS

Defendant next argues that he should be resentenced because the trial court based his sentence on his lack of remorse, thus punishing him for exercising his right to maintain his innocence and refusal to admit guilt. We disagree.

"Generally, this Court reviews a trial court's sentencing decisions for an abuse of discretion." *People v Conley*, 270 Mich App 301, 312; 715 NW2d 377 (2006). However, because defendant failed to preserve this issue for appeal, his claim is reviewed for plain error affecting defendant's substantial rights. *Id*.

"A court cannot base its sentence even in part on a defendant's refusal to admit guilt." *Id*. at 314 (quotation marks and citation omitted). This Court

> look[s] to three factors to determine if a sentencing court improperly considered a defendant's refusal to admit guilt: (1) the defendant's maintenance of innocence after conviction; (2) the judge's attempt to get the defendant to admit guilt; and (3) the appearance that had the defendant affirmatively admitted guilt, his sentence would not have been so severe. [*People v Payne*, 285 Mich App 181, 194; 774 NW2d 714 (2009) (quotation marks and citation omitted).]

The presence of all three factors indicates that the sentence was likely improperly influenced by a defendant's refusal to admit guilt. *Id*.

---

[1]To be convicted of AWIGBH requires proof that defendant acted with "intent to do great bodily harm, less than murder." MCL 750.84(1)(a). To be convicted of felonious assault, requires proof that defendant did not intent "to commit murder or to inflict great bodily harm less than murder. . . ." MCL 750.82(1).

Here, the trial court did not attempt to make defendant admit guilt or consider his refusal to admit guilt at sentencing. With respect to the first factor, defendant did not formally express acceptance of guilt. Instead defendant stated that he "apologize[d] to the victim for the tragic event that occurred," and expressed that "[i]t was never [his] intent for any of this to transpire," and asked for leniency. With respect to the second factor, the trial court did not attempt to get defendant to admit guilt. The trial court only gave defendant the opportunity for allocution. Lastly, the trial court did not indicate that if defendant admitted guilt, he would have received a less severe sentence. The trial court explained that its primary purpose in imposing defendant's sentence was to protect the public and deter other criminals. The trial court mentioned that after Milliner was shot, defendant initially claimed that Milliner shot himself to escape responsibility for his actions. Thus, the trial court only mentioned defendant's unwillingness to accept responsibility and his attempt to blame Milliner for the shooting, not his failure to admit guilt. The trial court's statements indicate that the court believed defendant was a poor prospect for rehabilitation. Resentencing is not warranted when "nothing in the record suggests that the trial court would have been more lenient had defendant admitted guilt." *Payne*, 285 Mich App at 194. Accordingly, defendant has failed to establish the trial court committed plain error at sentencing that affected his substantial rights. *Carines*, 460 Mich at 763.

## V. ASSESSMENT OF COURT COSTS

Defendant's final argument is that the trial court's assessment of court costs under MCL 769.1k(1)(b)(*iii*) constituted an unconstitutional tax and must be vacated. We disagree.

"Whether a charge is a permissible fee or an illegal tax is a question of law." *People v Cameron*, 319 Mich App 215, 220; 900 NW2d 658 (2017) (citation omitted). Constitutional questions such as this are reviewed de novo. *Id*. "[T]he burden of proving that a statute is unconstitutional rests with the party challenging it." *Id*. (citation omitted). However, because defendant failed to preserve this issue for appeal, his claim is reviewed for plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763.

Under MCL 769.1k, trial courts may impose court costs on defendants as long as those costs are "reasonably related to the actual costs incurred by the trial court." *Cameron*, 319 Mich App at 225. In *Cameron*, this Court recently held that the cost assessment of MCL 769.1k is a tax, not a fee, and that the tax is constitutional and within a trial court's power to assess to a defendant. *Id*. at 236. Defendant acknowledges that *Cameron* is controlling precedent that binds us but argues that *Cameron* was wrongly decided. Regardless of the merits of defendant's position, this Court

is bound to follow *Cameron*, under the rule of stare decisis, because it is a published decision of this Court that has not been overruled. *People v Cross*, 281 Mich App 737, 738; 760 NW2d 314 (2008). Because *Cameron* is controlling precedent, defendant has failed to show how the imposition of costs under MCL 769.1k constitutes plain error.

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Mark J. Cavanagh
/s/ Deborah A. Servitto